## DONNELLEY v. UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 110.    Argued November 22, 1927.    Reargued January 19, 1928.—
Decided April 9, 1928.

1. After certification of a question by the Circuit Court of Appeals, the entire record was ordered up. Plaintiff in error filed no state-

ment of points or specification of errors to be relied on, nor any brief other than one filed after the certification, dealing with the question certified. *Held* that review would be confined to that question. Rule 25, Par. 2 (e), Par. 4; Rule 11, Par. 9.  P. 511.

2. The general clause of § 29, Title II of the Prohibition Act providing that any person who "violates any of the provisions of this Title for which offense a special penalty is not prescribed, shall be fined for the first offense not more than $500 " etc., applies to a prohibition director who, having knowledge that a person has possessed and transported intoxicating liquor contrary to the Act, violates his duty under § 2 by intentionally failing to report the case to the United States Attorney.  P. 511.

3. The rule that penal statutes are to be strictly construed in favor of persons accused, is not violated by allowing the language to have its full meaning where that construction is in harmony with the context and supports the policy and purposes of the enactment. P. 512.

4. Public officers are not attended by any special presumption that general language in disciplinary measures does not extend to them. P. 516.

District Court affirmed.

REVIEW of a judgment of the District Court for the District of Nevada, sentencing Donnelley, a prohibition director, for wilful failure to report a violation of the Prohibition Act. The case came here first on a question certified by the Circuit Court of Appeals. The whole record was then ordered up.

*Mr. Frank H. Norcross*, with whom *Mr. Henry M. Hoyt* was on the brief, for Donnelley.

Section 2 was not intended to define or embrace a penal offense. An attempt to give it a penal character leads to absurd results. So construed, the Commissioner of Internal Revenue, his assistants, agents and inspectors, are guilty of a misdemeanor if they fail to investigate and report any violation of the Act coming to, or which should have come to, their knowledge. A third dereliction would amount to a felony. So construed, it becomes

the duty of the Commissioner, his assistants, agents and inspectors, not only to investigate offenses in connection with liquor violations, but each must investigate every other officer with whom he is associated and report him if such officer has failed so to investigate and report.

The section is a purely administrative provision prescribing in the most general language, and not with the particularity required in penal provisions, the duty of administrative officers in investigating and reporting such violations of the Act as are by its terms made " offenses."

If § 2 is penal, then Congress intended to take all discretion from officers entrusted with enforcement, and they cannot, as has been the practice, without themselves becoming violators, determine what class or character of violators it is most advantageous, for the purpose of real enforcement, to investigate and report, nor determine in any case under investigation when or whether evidence has been secured sufficient to justify prosecution.

Section 38 of the Prohibition Act provides for three classes of officers, two of which are specifically designated as " executive officers " and as " agents and inspectors in the field service," and the third class includes experts, clerical assistants, etc.   By the very terms of the statute, executive officers have nothing to do with the real work of investigating officers.

By the provisions of §§ 1800 and 1810 of Article XVIII of the .Regulations prescribed by the Commissioner of Internal Revenue, the Director must maintain an office not to be closed within certain prescribed hours and must be in attendance except when on leave or temporary absence.   By the terms of the Regulations, the Director cannot be an investigating officer in the strict or practical sense.   Upon the other hand, it is equally as manifest that investigating or field officers are not supposed to make reports to the United States Attorneys of the re-

sults of their investigation, which is the appropriate function of the directing officers under whatever name designated.

If § 2 is penal, it is not enough for an officer either to investigate or report; he must do both, regardless of the general character of his duties, and this of course, applies to the Commissioner of Internal Revenue especially.

Section 2 fails to say when reports shall be made. An offense may be discovered, but it may take weeks, months, or even years, to discover the offender and secure evidence to justify prosecution. Must an efficient officer report bare knowledge of an offense, and thus frustrate efforts to discover the perpetrator, or may he exercise his judgment as to when is the proper time to report? Is a prohibition officer subject to prosecution because his judgment happens to differ from that of a United States Attorney as to when an offense should be reported?

Section 2 contains not a single characteristic of a penal statute. Few reading it would ever suspect that it might be so intended. Even if it had included a specific provision that a violation of it would constitute an offense, an officer could not tell what he would have to do to comply with its terms so as to be immune from punishment.

Section 29 was not intended to apply to the purely administrative provisions of the Act. The general clause is limited to the same character of offenses previously specifically mentioned. The rule of *ejusdem generis* is clearly applicable.

The use of the word " offense " in the general clause indicates a legislative intent to prescribe a punishment only for the violation of those prohibitions or commands in relation to manufacture, transportation or disposition of liquor, which it was the purpose of the Act to regulate or prevent, and for which offenses a special penalty had not been prescribed.

It is inconceivable that Congress contemplated that the Commissioner of Internal Revenue and his subordinate officers might be repeatedly prosecuted and punished for violating the administrative provisions of the Act. *United States* v. *Seibert*, 2 F. (2d) 80.

It has never been the theory of the Government that public officers will perform their duties only in fear of prosecution for dereliction of duty. Only in rare instances and exclusively in matters pertaining to public revenues, is a failure to make reports made penal, and in those cases the time and character of the report are clearly prescribed and the penalty for failure definitely expressed. Rev. Stats. § 3169; Comp. Stats. § 5889.

A construction of the Act which would provide the means for meddlesome interference with the policy of executive enforcement officers would be far from a liberal construction "to the end that the use of intoxicating liquor as a beverage may be prevented."

A new offense will not be deemed to have been created by statute unless the legislature has expressed its will in language sufficiently explicit to be apparent to the common mind. It is only when a statute clearly and plainly subjects parties and acts to its denunciation that they may be lawfully punished thereunder. *Connally* v. *General Construction Co.,* 269 U. S. 385; *United States* v. *Noveck,* 272 U. S. 202; *United States* v. *Katz,* 271 U. S. 354; *United States* v. *Reese,* 92 U. S. 14; *First Nat'l Bank* v. *United States,* 206 Fed. 374.

*Assistant Attorney General Mabel Walker Willebrandt,* with whom *Solicitor General Mitchell* and *Messrs. Norman J. Morrisson* and *John J. Byrne,* Attorneys in the Department of Justice, were on the brief, for the United States.

The provision in § 29 that any person who violates any provision of Title II of the National Prohibition Act shall

be guilty of a criminal offense does not seem to have been intended to punish administrative officers and United States Attorneys for failure to perform the numerous duties imposed on them by the Act. While the question is one on which opinions may differ, the better reason supports the view that it was not intended by § 29 to punish as a crime the failure of an administrative officer to report to the United States Attorney a case justifying prosecution.

If the statute is construed to make that an offense, then it was error for the trial court to refuse to charge the jury that a violation of the Act did not occur unless the official had evidence sufficient to reasonably warrant prosecution. The other charges refused or given and complained of do not disclose prejudicial error.

If the statute covers the case, the evidence was sufficient to go to the jury on the question whether the plaintiff in error had in bad faith neglected to report for prosecution a case where he had sufficient evidence to warrant prosecution.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Defendant was the Prohibition Director for Nevada. An information filed in the United States court for that district charged that he, having knowledge of the unlawful possession and transportation of intoxicating liquor by one Curran, did wilfully and unlawfully fail to report such violations to the United States Attorney. The jury found him guilty and the court imposed a fine of $500. Alleging various grounds for reversal, he took the case to the Circuit Court of Appeals. That court, acting under § 239 of the Judicial Code, certified to this Court a question concerning which it desired instruction. Defendant submitted the question upon a brief. Later we required the entire record to be sent up, and so brought

the case here for decision.    The United States filed additional briefs.    Oral arguments were made for the respective parties.    But defendant failed to submit any other brief or to file any statement of points or specification of errors intended to be urged here.    Rule 25, Par. 2(e), Par. 4.    And see Rule 11, Par. 9.    We confine our consideration to the question argued in his brief.    *Southeastern Express Co.* v. *Robertson,* 264 U. S. 541.    *Home Benefit Association* v. *Sargent,* 142 U. S. 691, 694–695. The substance of the contention is that intentional failure of a prohibition director or other enforcement officer, having knowledge of crimes and offenders against the Act, to report them to the United States Attorney is not a punishable offense.

Section 2, Title II, of the National Prohibition Act (c. 85, 41 Stat. 305, 308; U. S. C., Tit. 27, § 11), provides: " The Commissioner of Internal Revenue, his assistants, agents, and inspectors shall investigate and report violations of this Act to the United States Attorney for the district in which committed, . . . "    The Act does not specifically fix punishment for a violation of that provision.    But § 29 provides that: "Any person . . . who . . . violates any of the provisions . . . for which offense a special penalty is not prescribed, shall be fined for a first offense not more than $500 . . . "

As there are no common law crimes against the Government (*United States* v. *Eaton,* 144 U. S. 677), each case involves the construction of a statute to determine whether the acts or omissions of the accused are denounced as punishable.    And regard is always to be had to the familiar rule that one may not be punished for crime against the United States unless the facts shown plainly and unmistakably constitute an offense within the meaning of an Act of Congress.    *United States* v. *Lacher,* 134 U. S. 624, 628.    *Todd* v. *United States,* 158 U. S. 278, 282.    *Fasulo* v. *United States,* 272 U. S. 620, 629.

The evidence showed, and the verdict, when read in the light of the court's charge, means that the jury found that Curran was discovered transporting ten barrels of intoxicating liquor and that plaintiff in error, with actual knowledge of that violation, intentionally failed to report the crime and offender for prosecution. Plainly that was a violation of duty imposed on him by § 2. And § 29 declares that violators of any provision shall be punished. Taken according to their ordinary meaning, the words used are sufficient to make the facts alleged and found a punishable offense. The rule that penal statutes are to be strictly construed in favor of persons accused is not violated by allowing the language to have its full meaning where that construction is in harmony with the context and supports the policy and purposes of the enactment. *United States* v. *Hartwell,* 6 Wall. 385, 395. *United States* v. *Wiltberger,* 5 Wheat. 76, 95. Section 3 forbids a narrow or strict construction of the Act, and directs that all its provisions " shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Diligence and good faith on the part of enforcement officers are essential. The great difficulties always attendant upon efforts to suppress the liquor traffic have been noticed and cited in a number of decisions of this Court. *Crane* v. *Campbell,* 245 U. S. 304, 307. *Jacob Ruppert* v. *Caffey,* 251 U. S. 264, 282, 297. *Everard's Breweries* v. *Day,* 265 U. S. 545, 560. *Lambert* v. *Yellowley,* 272 U. S. 581, 595. The failure to enforce laws of the States passed to regulate or prohibit the sale of intoxicating liquor was one of the principal reasons for the adoption of the Eighteenth Amendment. Violations of such enactments were open and notorious. Connivance and cooperation between officers and offenders frequently existed. Those who drafted and passed the enforcement Act knew that national prohibition would be assailed by

influences more powerful than those that had embarrassed earlier and less sweeping state laws.   Experience had shown that it would not do to leave prohibition enforcement officers free to determine what cases should be prosecuted and what ignored, and that mere imposition of duty to report offenders would not be enough. The infliction of punishment for their intentional violations is an appropriate measure to hold them to the performance of their duties.

The Act is comprehensive and discloses a legislative purpose fully to enforce the prohibition declared by the Eighteenth Amendment. *National Prohibition Cases,* 253 U. S. 350.   *Corneli* v. *Moore,* 257 U. S. 491.   *Vigliotti* v. *Pennsylvania,* 258 U. S. 403.   *Grogan* v. *Walker &* *Sons,* 259 U. S. 80.   *Everard's Breweries* v. *Day, supra.* *Lambert* v. *Yellowley, supra.*   The forfeitures, fines and imprisonments unquestionably provided for show an intention to compel obedience.   Congress was not content to impose duties and merely direct their performance; it diligently provided means for enforcement.   An abridged reference to the things denounced as unlawful or expressly forbidden and those by the Act commanded to be done will be sufficient to indicate how thoroughly Congress intended to enforce this Article.   The Act prohibits beverages having as much as one-half of one per cent. of alcohol by volume (§ 1).   It declares that no person shall manufacture, sell, barter, transport, import, export, deliver, furnish or possess such liquor except as authorized by the Act.   (§ 3.)   Denatured alcohol, medicinal, toilet and other preparations unfit for beverage purposes are not forbidden, if they correspond with the descriptions and limitations specified.   Purchase and possession of liquor to make such articles are allowed, but manufacturers are required to procure permits, give bonds, keep records and make reports.   (§ 4.)   No person is allowed without a permit to manufacture, sell, purchase, transport

318°—28——33

or prescribe liquor, but one may purchase and use it for medicinal purposes when prescribed by a physician. (§ 6.) No one but a physician holding a permit may issue a prescription for liquor. And no physician is allowed to prescribe it unless, upon an examination or the best information obtainable, he believes its use as a medicine is necessary and will afford relief from some known ailment. No more than a pint of spiritous liquor shall be prescribed for the same person within ten days, and no prescription shall be filled more than once. Every physician is required to keep a record showing the date of every prescription, the amount prescribed, to whom issued, the purpose or ailment for which it is to be used, the amount and frequency of the dose. No physician may prescribe liquor and no pharmacist may fill any such prescription except on blanks furnished by the commissioner, and pharmacists are required to keep records of prescriptions filled. (§§ 7 and 8.) No person is allowed to manufacture, purchase for sale, sell or transport liquor without making a permanent record showing prescribed details. (§ 10.) Copies of permits to purchase must be preserved by the seller. (§ 11.) Manufacturers are required to attach labels showing details concerning liquor made and sold by them. (§ 12.) It is unlawful for any person to procure the transportation of liquor without giving the carrier notice of the character of the shipment. No carrier is permitted to transport and no person may receive liquor from a carrier unless there is shown upon the package, specified information as to consignor and consignee, and also the number of the permit allowing the transportation. (§ 14.) It is unlawful for any consignee to receive or any carrier to deliver any liquor in a container on which appears any statement known to be false. (§ 15.) It is unlawful to advertise liquor or to permit a sign advertising it to remain on one's premises (§ 17), or to advertise or to

possess for sale any utensil, substance or recipe intended for use in its unlawful manufacture (§ 18), or to give any information as to how liquor may be obtained in violation of law. (§ 19.) Every place where liquor is made, kept or sold in violation of the law is declared to be a nuisance, and the person who maintains it is liable to specified punishment. (§ 21.) It is declared that any violation on leased premises by the lessee or occupant shall work a forfeiture of the lease at the option of the lessor. (§ 23.) When an officer shall discover one transporting liquor in any vehicle in violation of law it is his duty to seize the liquors, take possession of the vehicle, arrest and proceed against the person in charge of it. (§ 26.)

A conservative analysis of the provisions of the Title is contained in one of the briefs filed by the Government. It shows eight provisions declaring specified things to be unlawful, eighteen prohibiting others and fifteen commanding the performance of various obligations imposed. Except for nuisance (§§ 21–23. Cf. §§ 24, 25), all punishments to be imposed on offenders are prescribed by § 29. Its substance follows. "Any person who manufactures or sells liquor in violation of this title shall for a first offense be fined . . . or imprisoned . . . " Second and subsequent offenses are more severely to be punished. "Any person violating the provisions of any permit, or who makes any false record, report, or affidavit required by this title, or violates any of the provisions of this title, for which offense a special penalty is not prescribed, shall be fined for the first offense not more than $500 "; and heavier penalties are prescribed for second and subsequent offenses. Obviously Congress intended to provide for the punishment of the things declared to be unlawful and those specifically prohibited. And it is plain that there was no failure to provide measures for the enforcement of its commands. Undoubtedly the general clause of this

section covers unauthorized transportation, importation, exportation, delivery, possession and the advertising or possession for sale of anything intended for use in its unlawful manufacture. The clause is broad enough—and it is the only one—to make punishable violations of the provisions governing manufacturers, pharmacists, shippers and carriers. Undoubtedly Congress intended to penalize their violation of the duties imposed on them. And, unless it is to be restricted by implication in favor of enforcement officers, the general language used also covers violations of the provisions enacted to govern their official conduct.

But there is no support for a construction so restrained. It always has been deemed necessary to enact laws to compel performance of duty and to prevent corruption on the part of public officers. They are not attended by any special presumption that general language in disciplinary measures does not extend to them. Neglect of official duty is a misdemeanor at common law. Russell Crimes and Misdemeanors (7th Ed.), p. 601. *People* v *Herlihy*, 72 N. Y. S. 389, and cases cited. Intentional failure of enforcement officers to report violations is doubly injurious to the public. It encourages offenders and disgraces the law. Performance of duty by prohibition agents is quite as important as compliance with law by authorized manufacturers, physicians, pharmacists and carriers. The general clause in question applies to the latter. With equal reason it may be held to cover failures of enforcement officers to report for prosecution violations and offenders known to them. And that construction is consistent with the established policy of Congress. Similar neglect of duty has long been punishable. The Act of July 18, 1866,[1] imposes penalties upon collectors of customs and other officers for failure to make required

---

[1] § 42, c. 201, 14 Stat. 178, 188; R. S. § 1780; as amended by Act of March 4, 1909, § 101, c. 321, 35 Stat. 1088, 1107; U. S. C., Tit. 18, § 188.

reports. An Act of July 20, 1868,[2] provides that any revenue officer or agent who, having knowledge or information of the violation of the revenue laws, fails to report the same to his superior officer and the Commissioner of Internal Revenue shall be punished by fine and imprisonment. The duties of prohibition officers and revenue officers overlap. They are in the same department and directed by the same head. They are under like duty to report. Cf. R. S. § 3164, as amended; U. S. C., Tit. 26, § 26. Treasury regulations require that the reports of prohibition agents shall include statements of infringements of internal revenue laws also involved. Regulations 12, Art. 35. They are entitled to like protection against prosecution in state courts for acts done under color of their office. *Maryland* v. *Soper* (No. 1), 270 U. S. 9. And the policy of Congress is further shown by the Prohibition Act for the District of Columbia, which makes it an offense for any officer to fail to report violations to the corporation counsel.[3] These and other Acts [4] prescribing punishment for neglect of official duty strongly support the contention that Congress intended to make prohibition officers punishable for failure to make the reports required by § 2.

Defendant argues that, if the failure of enforcement officers to report violations be held punishable " they cannot . . . determine what classes or character of violators it is most advantageous, for the purpose of real enforcement, to investigate and report." But there is

---

[2] § 98, c. 186, 15 Stat. 125, 165; R. S. § 3169; U. S. C., Tit. 26, § 64. And see Act of February 8, 1875, § 23, c. 36, 18 Stat. 307, 312; U. S. C., Tit. 26, § 68.

[3] Act of March 3, 1917, § 21, c. 165, 39 Stat. 1123, 1129.

[4] Neglect of duty by employee in the census. § 22, c. 2, 36 Stat. 1, 8, reenacted as § 22, c. 97, 40 Stat. 1291, 1299; U. S. C., Tit. 13, § 44. Neglect of duty imposed by Alaska Game Commission Act, § 15, c. 75, 43 Stat. 739, 747; U. S. C., Tit. 48, § 202. Failure of guide to report violation of Alaska Game Law, § 5, c. 162, 35 Stat. 102, 104; U. S. C., Tit. 48, § 202.

nothing to indicate that any such determinations are to be made. Congress intended that prohibition officers should not intentionally fail to report violations and that the law should be enforced against all offenders. The general clause covers all violations except the relatively few specifically dealt with. And it reasonably may be held to apply to violations of official duties and to safeguard against connivance between officers and offenders. He also argues that the imposition of heavier penalties for second and subsequent offenses shows that the clause was not intended to apply to offending officers because, as it was said, they would not be in office after conviction. But that suggestion has little if any weight when it is remembered that the clause is aimed at so many violations and non-office-holding offenders. There is no rule requiring every part of the provision to apply to all classes covered by it. Cf. *United States* v. *Union Supply Company*, 215 U. S. 50, 55. Moreover, it is not impossible that an enforcement officer may be in office subsequent to a conviction for such an offense.

The construction contended for by defendant unduly restrains the language of the clause in question, is inconsistent with the context and contrary to the purposes of the Act and the policy of Congress. It is without substantial support and cannot be sustained. *Judgment affirmed.*

MR. JUSTICE SUTHERLAND and MR. JUSTICE SANFORD dissent.