## UNITED STATES v. G. WILKENFELD & CO., Inc., et al.

District Court, E. D. New York.
May 26, 1930.

Judgment affirmed, 46 F.(2d) 464.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Lindsay R. Henry and James E. Wilkinson, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the United States.

Harold L. Turk, of Brooklyn, N. Y., for defendants G. Wilkenfeld & Co., Inc., et al.

Charles J. Buchner, of Brooklyn, N. Y., for defendants John Lepora, Harry Lepora, and John Manno.

MOSCOWITZ, District Judge.

The defendants G. Wilkenfeld & Co., Inc., Abner B. Taub, Jacob Taub, and Gustave Wilkenfeld were tried and convicted by a jury upon an indictment charging them and others with the crime of conspiracy.

The indictment, among other things charges:

"That it was a part of said conspiracy and plan that the said defendants G. Wilkenfeld & Co. Inc., Abner B. Taub, Jacob Taub and Gustave Wilkenfeld should obtain possession of and assemble in the premises #34 Division Place, in the Borough of Brooklyn, New York City, and in the buildings adjacent thereto, a large quantity of bottles, corks, labels, dyes and shavings from the inside of whiskey barrels, commonly known as 'Rye Chips,' for the purpose of advertising, manufacturing, selling and possessing the same for sale, and which were advertised, designed and intended for use in the unlawful manufacture of intoxicating liquors.

"It was further a part of said conspiracy and plan that the defendants, G. Wilkenfeld & Co. Inc., Abner B. Taub, Jacob Taub and Gustave Wilkenfeld, should obtain possession of, possess and assemble at the said premises #34 Division Place, and the buildings adjacent thereto, in the Borough of Brooklyn, New York City, a large quantity of utensils, contrivances, preparations, compounds, tablets and substances, to wit: a large quantity of barrels which had heretofore contained whiskey and other intoxicating liquors, it being further a part of the said conspiracy and plan to shave and scrape the insides of said barrels for the purpose of using the shavings therefrom and commonly known as 'Rye Chips,' for sale, and to possess the same for sale, the said shavings from the inside of said barrels being designed and intended for use in the unlawful manufacture of intoxicating liquor; against the peace and dignity of the United States of America and contrary to the form of the statute in such case made and provided. (Title 18, United States Code, Section 88; Title 27, United States Code, Sections 12, 30, 33 and 39.)"

The defendants moved to set aside the verdict of the jury. Decision on the motion was reserved upon consent pending the decision of the Supreme Court of the United States in the case of Ike Danovitz, surviving partner of Feitler Bottle Company, Claimants, v. United States of America, 281 U. S. 389, 50 S. Ct. 344, 345, 74 L. Ed. 923, decided May 5, 1930.

On February 11, 1929, during the afternoon police officers went to premises No. 34 Division place, in the borough of Brooklyn, city of New York, and observed two men scraping barrels in the driveway of the garage of said premises. The odor of whisky was emanating from the premises. In the driveway the officers had a conversation with two employees who were engaged in scraping whisky barrels. In a conversation with one of the employees who was engaged in scraping the barrels the employee stated: "Can't you see what we are doing?" He was asked why they were scraping the barrels and the employee replied, "Ask the boss."

The police officers then entered the premises and had a conversation with the defendant Abner Taub, who admitted that the defendants were engaged in selling the shavings from the whisky barrels. Upon searching the premises there was found six bundles of labels for bottles. The labels were marked "High and Dry Gin," "London Dry Gin," "Golden Wedding," "Gibson Rye," and "Mt. Vernon Rye." There were several thousand of these labels tied up in small packages wrapped in larger packages with tissue paper wrappers. There were also found lead caps and corks, wrappers, cartons, and containers in which are placed single quart bottles. There was also found eight 50-gallon barrels of whisky shavings on a truck. The defendant Wilkenfeld informed the officers that the barrels were scraped, rebarreled, cleaned, and sold at $50 a barrel.

The defendants contend that they were engaged in a legitimate business of selling scrapings and selling barrels. In this connection the testimony of Officer Schupp is significant. He found labels, wrappers, and cartons secreted in a secret compartment. The officer testified, as follows:

"Q. Just tell us how much of that stuff you found. A. After spending about half an hour in searching the premises, I found a secret compartment behind some cases of empty bottles standing approximately fifteen feet high, which I had to mount and get over to the other side, which led me to the secret compartment, which was filled with labels, wrappers, corks, and so forth used for finishing of a bottle, whatever the bottle contained, such as gins, cordials, whiskies, Scotch, brandy, or any other kind of name mentioned on the labels.

"Mr. Turk: Do I understand that the witness has testified that they had been using alcohol?

"The Witness: **No.**

464

"Mr. Turk: Just the names were printed on them?

"The Witness: The names were printed on those labels.

"Q. I show you Government's Exhibits Nos. 1 and 2 (Handing exhibits to witness). Did you see any labels like those there? A. I did.

"Q. Can you tell us about how many, or what quantity? A. There were several thousands of labels, all of different brands of whiskies, cordials, brandies, and so forth."

It was left to the jury to determine whether the defendants were engaged in a conspiracy to violate title 27, USCA sections 30 and 39. Section 39 has been recently construed by the Supreme Court of the United States in the case of Ike Danovitz, surviving partner of Feitler Bottle Company, Claimants, v. United States of America, supra.

Referring to the word "manufacture" used in the statute, the court said: "The argument for the petitioner cannot be helped by amplification. It is obviously correct if the word 'manufacture' be taken in the strictest and most exact sense. But the word may be used in a looser way to express the whole process by which an article is made ready for sale on the open market. P. Lorrilard Co. v. Ross, 183 Ky. 217, 223, 209 S. W. 39. As the purpose of the Prohibition Act was to 'suppress the entire traffic' condemned by the act, United States v. Katz, 271 U. S. 354, 357, 46 S. Ct. 513, 70 L. Ed. 986; Donnelley v. United States, 276 U. S. 505, 513, 48 S. Ct. 400, 72 L. Ed. 676, it should be liberally construed to the end of this suppression, and so directs. Title 2, § 3, of the Act, Code, title 27, § 12 (27 USCA § 12). The decisions under the revenue acts have little weight as against legislation under the afflatus of the Eighteenth Amendment. We are of the opinion that the word was used in this looser way, and that if the empty containers and the other objects seized were offered for sale in such a mode as purposely to attract purchasers who wanted them for the unlawful manufacture, as we interpret the word, they were designed for that manufacture and could be seized."

The jury was justified in believing that the defendants possessed the chips, barrels, labels, bottles, and that they were intended to be used and were used in violation of the law.

Motion to set aside the verdict is denied.