## HILL v. UNITED STATES.

### No. 7363.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1934.

G. S. Peck, of Atlanta, Ga., for appellant.

M. Neil Andrews, Asst. U. S. Atty., and Edward S. Chastain, Asst. U. S. Atty., both of Atlanta, Ga.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Edwin R. Hill, a lawyer, and Jasper F. Anderson, a physician, were convicted of using the mails for the purpose of executing a scheme to defraud, in violation of 18 USCA § 338. The scheme alleged in the indictment was to collect damages from a railroad company in the names of Kierbow and Hunnicutt by falsely representing that on August 14, 1933, they were passengers on one of its trains which was in fact wrecked, and that they were injured in the wreck. Hill, who alone appeals, contends in support of his assignments of error that the trial court erred (1) in refusing to direct a verdict of not guilty, and (2) in overruling objections to questions on his cross-examination seeking an admission that he had attempted to procure a witness to give false testimony in two suits for damages tried in 1927 against a different defendant, and in which he was attorney for the plaintiffs.

Although a passenger train operated by the railroad company was in fact derailed near Atlanta, Ga., on August 14, 1932, neither Kierbow nor Hunnicutt was a passenger on it, or was injured in the wreck. In September, 1933, Hill wrote and sent through the mail three letters which are set out in separate counts of the indictment. They were all calculated to further the fraudulent scheme, if there was one. On August 15th, the day after the train was derailed, Hill sent a note by hand to Kierbow, requesting Kierbow to call at his office in Atlanta on the 16th, stating, "We can make some cash in a few days." According to the government's evidence, Kierbow called at Hill's office at the time mentioned in the note, whereupon Hill informed Kierbow that a train of the railroad company had been wrecked and proposed that Kierbow pretend to have been a passenger on it and to have been injured in the wreck; and that Kierbow procure another man who would pretend that he too had been a passenger on the train and had also been injured. Hill told Kierbow Dr. Ander-

son would make examinations and furnish reports upon which damages could be collected for the supposed injuries, and that he would present claims therefor to the railroad company. Kierbow, replying that he had not been in the wreck, and did not know there had been one, did not at that time agree to Hill's proposal, but within an hour went to claim agent Webb and told him "all that Mr. Hill had said," and on the following day went with Webb to the attorney for the railroad company. Kierbow, referring to the railroad men, testified that "they told me to get another man and go back to Mr. Hill and play along with him, and see how far he would go." Within two or three days after this last interview, Kierbow and Hunnicutt went to Hill's office, where they gave him authority to proceed in their behalf against the railroad company for damages. Anderson examined them and made up reports purporting to show that they were injured, and took them to other physicians who made similar written reports. Hill showed these reports to Webb, the claim agent, negotiated with him for settlements, and failing in that, on the 11th of September brought suits for Kierbow and Hunnicutt against the railroad company for damages. On August 24th Hill sent a letter by hand, making claim for damages, to the president of the railroad company, who, by letter sent through the mails the next day, referred him to the claim agent Webb. Early in September two surgeons of the railroad company examined Kierbow and Hunnicutt and reported to the railroad company that they had discovered no evidence of the injuries claimed. On his direct examination Hill, after testifying that he thought the claims of Kierbow and Hunnicutt were genuine, and that he did not ask either of them to make an untrue statement, added, "I have never asked anyone to make a statement contrary to their knowledge." On cross-examination he was asked if in 1927 he had not attempted to procure a witness to testify in two cases against the "Power Company," and if he had not offered a witness $100 in each case to memorize a false statement and give it as his testimony. After his counsel's objections to these questions had been overruled, Hill answered in the negative; and the government offered no evidence in rebuttal on this subject.

The motion for directed verdict was based on two grounds. The first was that the railroad company, since it had full knowledge of the scheme before Hill resorted to the use of the mails, could not possibly have been defrauded. But obviously the point cannot be sustained, since the statute has reference to unsuccessful as well as to successful fraudulent schemes. The second ground of the motion was that, even according to the government's evidence, Hill was entrapped by the railroad company's officers and agents. It is equally untenable. The scheme was fully formed and completed by defendants before the railroad company knew anything about it. Nor did the intended victim actively participate in carrying it out; it only stood by and permitted the defendants to go forward with it. The railroad company did nothing to induce or suggest even that defendants make use of the mails. Under these circumstances the evidence falls far short of showing entrapment. Grimm v. United States, 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Hunter v. United States (C. C. A.) 62 F.(2d) 217, 218; Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143. See, also, note to the Butts Case in 18 A. L. R. 146, 149, 185.

In a way Hill invited the questions propounded to him on his cross-examination, and to which he objected, by volunteering the statement on his direct examination that he had never asked any one to make a false statement. But assuming those questions to be improper, Hill's answers exonerating himself were not contradicted or attempted to be, and so it is not seen that he could have been injured. The questions were not such as in their very nature were so prejudicial as to require a new trial.

Reversible error is not shown. The judgment is affirmed.