## NORTON v. UNITED STATES.

### No. 8567.

Circuit Court of Appeals, Ninth Circuit.

Oct. 28, 1937.

754

Morris Lavine, of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Jack L. Powell and Carl Eardley, Asst. U. S. Attys., all of Los Angeles, Cal.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appellant was convicted of the crime of using the mails to defraud. Criminal Code § 215 (18 U.S.C.A. § 338).

The appeal presents the question of the sufficiency of the indictment to state an offense under the statute. The sufficiency of the evidence is also challenged, but the latter point need not be determined.

For a proper understanding of the problem presented to this court it is essential to review the allegations of the indictment.

It is charged .that the appellant, Violet Wells Norton (and certain other parties who were later dismissed), devised "a scheme and artifice to defraud Clark Gable" and to obtain money from him "by means of false and fraudulent pretenses, representations, statements, and promises." The nature of the scheme and artifice is detailed in substance as follows:

That the appellant would represent and claim that she had illicit relations with Gable in the month of September, 1922, in England, and that as a result of such relations a child, Gwendoline, of which Gable was the father, was born to her in June, 1923; and that appellant would thus fraudulently obtain money from Gable for the support and education of Gwendoline, without any right thereto on her part, or any obligation on the part of Gable.

It is charged that all these representations and pretenses were made; that all of them were false, in that appellant had not had sexual relations with Gable in September, 1922, or at any other time, in England, or in any other place; that in truth Gable was not in England in 1922 or 1923 and did not then, or at any other time, know or meet appellant; that Gable is not the father of the child Gwendoline and is not liable for her support; and that neither she nor appellant has any valid claim against Gable. Further, that appellant knew at all times that these representations and pretenses were false, and that they were made knowingly with the felonious intent to cheat, wrong, and defraud Gable of his money.

The indictment then sets out a letter alleged to have been written by appellant and caused by her to be delivered to Gable through the United States mail for the purpose of executing the scheme and artifice. This letter salutes Gable as "Frank." It is couched in terms of endearment. In substance, it assumes the existence at some time in the past of an intimate relationship between the writer and Gable, the latter being addressed throughout as "Frank." It solicits a resumption of the relationship, and Gable is urged to come forward with the means of placing their child, Gwendoline, in school.

On its face the indictment appears to present a scheme to defraud Gable by falsely representing to him that he is the father of appellant's child, conceived and born in England. Since the intended victim had not been in England, he could not have

been tricked by this falsehood. It is not, however, a necessary ingredient of the offense punishable by the statute that the one toward whom false representations are directed shall actually be misled by them. The circumstances may be such as to render him immune to deception. Hill v. U. S. (C.C.A.5, 1934) 73 F.(2d) 223.

█ But intent to defraud is an essential element of the offense. The person devising the fraudulent scheme must intend in some manner to delude the person upon whom the scheme is to be practiced. There can be no intent to deceive where it is known to the party making the representations that no deception can result.

█ Here, every circumstance upon which appellant might have based a hope of perpetrating a deception is negatived in the indictment. It is averred that the accused and Gable had not met or known each other. It is necessary to conclude from the language of the averments that each was aware of that fact and each knew the other to be aware of it. Humanly speaking, it is not possible to impute to the accused woman the purpose of inducing Gable to part with his money on the strength of her story, since she knew he could not be taken in by it. In determining the sufficiency of the indictment the court will not consider possibilities beyond the range of rational experience.

Nor do we understand counsel for the government so to interpret the scheme charged. Their position is that appellant's assertions that she had had intercourse with Gable and that as a result a daughter was born to them, coupled with the demand for the support of the daughter and the threat to expose this situation to the world if her demands were not met, are false statements and false pretenses within the meaning of the act.

While no threat to make public the details of the pretended relationship is charged in the indictment or is contained in the letter incorporated in it, such threat may perhaps be implicit in the very nature of the artifice. But a scheme of that sort is not one to trick or deceive. It is a scheme to coerce or extort, and is a·species of blackmail. See act of July 8, 1932, 47 Stat. 649, as amended by act June 28, 1935, 49 Stat. 427, 18 U.S.C.A. § 338a. The means employed are not trickery or deceit, but the putting in fear. Is such a scheme within the purview of the statute punishing the use of the mails to defraud?

The pertinent words of the statute (Cr. Code § 215, 18 U.S.C.A. § 338) are as follows: "Whoever, having devised * * * any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall, for the purpose of executing such scheme * * * place, or cause to be placed, any letter * * * in any postoffice ʿ* * * to be sent or delivered" shall be punished as provided therein.

In Horman v. U. S. (1902) 116 F. 350, 352, the Court of Appeals of the Sixth Circuit affirmed a conviction under section 5480, Revised Statutes (now, as amended, section 215 of the Criminal Code, 18 U.S.C.A. § 338). There the averments in one count of the indictment were that the accused claimed to have within his knowledge information of a specific crime committed by a named person, of which exposure was threatened by the accused, and of which crime such person was innocent, as accused well knew, and that accused made the charge in an attempt to work out his allegedly fraudulent scheme to obtain a sum of money. A letter was set out containing threats of exposure unless the money was paid. In construing the term "to defraud" as used in the statute, the court held that the phrase is not descriptive of the character of the artifice, but rather of the wrongful purpose involved in devising it. It is stated that, "If the scheme or artifice in its necessary consequence is one which is calculated to injure another, to deprive him of his property wrongfully, then it is to defraud within the meaning of the statute."

In Hammerschmidt v. U. S. (1924) 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968, it was said that the decision in the Horman Case went to the verge, and it was remarked that since that opinion had been handed down section 5480 had been subjected to a clarifying amendment (the act of March 4, 1909, 18 U.S.C.A. § 338).

In Naponiello v. U. S. (1923) 291 F. 1008, 1010, the Court of Appeals of the Seventh Circuit held that use of the mails to send black-hand letters whereby defendants undertook to extort money by means of threats of bodily harm is not a use of the mails to promote a scheme to defraud within section 215 of the Criminal Code, 18 U.S.C.A. § 338. The court said: "We agree that obtaining money through the intimidating influence of threats is a more

heinous crime than obtaining money through deception. But threats which the victim believes will be carried into execution unless he acquiesces in the demands are not deceits."

In Lupipparu v. U. S. (C.C.A.9, 1925) 5 F.(2d) 504, and in Fasulo v. U. S. (C.C.A.9, 1925) 7 F.(2d) 961, this court, following the opinion in the Horman Case, upheld convictions under section 215, based on schemes to obtain money by writing letters pretending that the writers would murder the addressee unless he deposited at a designated time and place a sum of money. In the Lupipparu Case Judge Rudkin called attention to the contrary conclusion which had been reached in the Naponiello Case, but relied in part on the fact that certiorari had been denied by the Supreme Court in Horman v. U. S., 187 U.S. 641, 23 S.Ct. 841, 47 L.Ed. 345.

In the later of the two cases decided by this court certiorari was granted and the judgment of conviction was reversed. Fasulo v. U. S., 272 U.S. 620, 47 S.Ct. 200, 202, 71 L.Ed. 443. After a review of the authorities the Supreme Court there said:

"If threats to kill or injure unless money is forthcoming do not constitute a scheme to defraud within the statute, there is none in this case. The only means employed by petitioner and his co-conspirators to obtain the money demanded was the coercion of fear. A comprehensive definition of 'scheme * * * to defraud' need not be undertaken. The phrase is a broad one and extends to a great variety of transactions. But broad as are the words 'to defraud,' they do not include threat and coercion through fear or force. The rule laid down in the Horman Case includes every scheme that in its necessary consequences is calculated to injure another or to deprive him of his property wrongfully. That statement goes beyond the meaning that justly may be attributed to the language used. The purpose of the conspirators was to compel action in accordance with their demand. The attempt was by intimidation and not by anything in the nature of deceit or fraud as known to the law or as generally understood. The words of the act suggest no intention to include the obtaining of money by threats. There are no constructive offenses; and, before one can be punished, it must be shown that his case is plainly within the statute."

The alleged scheme to obtain money from Gable by means of the arguable threat to publish the details of a liaison which he was falsely represented to have had with appellant is not distinguishable, on principle, from those dealt with in the Horman and Fasulo Cases. The nature of the fear sought to be induced in the mind of the intended victim would seem to be immaterial. Whether it be fear of bodily harm invoked by threats of violence, or fear of injury to reputation or good name by threat to publish a false accusation, the effect on the mind of the recipient is the same, and the intent of the perpetrator of the scheme is the same. In neither instance is there a scheme or artifice to defraud or for obtaining money under false representations or promises as contemplated by the statute.

 There are no common-law crimes against the United States. U. S. v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591. "Regard is always to be had to the familiar rule that one may not be punished for crime against the United States unless the facts shown plainly and unmistakably constitute an offense within the meaning of an act of Congress." Donnelley v. U. S., 276 U.S. 505, 48 S.Ct. 400, 401, 72 L.Ed. 676; Fasulo v. U. S., supra.

The judgment is reversed.