**HUDSPETH, Warden, v. MELVILLE.**

**No. 2305.**

Circuit Court of Appeals, Tenth Circuit.

Nov. 12, 1941.

Rehearing Denied May 19, 1942.

Summerfield S. Alexander, U. S. Atty., of Topeka, Kan. (Homer Davis, Asst. U. S. Atty., of Topeka, Kan., on the brief), for appellant.

E. R. Sloan, of Tokepa, Kan., amicus curiæ, on brief.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This is a proceeding in habeas corpus. John W. Melville, hereinafter called petitioner, was indicted in two counts in the United States Court for Nebraska. The first count charged that he entered the First National Bank of Grand Island, Nebraska, with the intent to commit therein a felony, namely, to unlawfully and feloniously and with the intent to defraud, utter a check in the sum of $42.50, payable to the First National Bank of Grand Island, drawn on the Huntington National Bank of Columbus, Ohio, in and with which bank petitioner did not have sufficient funds or credit for the payment of such check or any part thereof; and the second count charged that he took, stole and carried away $42.50 in money, the property of the First National Bank of Grand Island, with the intent to steal and purloin it. Petitioner pleaded guilty to both counts, and was sentenced on the first to imprisonment in the penitentiary for a term of four years, and on the second to one year in jail, with provision that the sentence on the second count be suspended and petitioner placed on probation. Commitment issued upon the judgment under the first count and petitioner was confined in the federal penitentiary at Leavenworth, Kansas, serving the sentence. By petition for the writ of habeas corpus he sought discharge on the ground that the first count in the indictment did not charge any offense under the laws of the United States. The trial court granted the writ and entered final judgment releasing petitioner from custody. The warden appealed.

Subsection (a) of section 2 of the Act of May 18, 1934, 48 Stat. 783, as amended by the Act of August 24, 1937, 50 Stat. 749, 12 U.S.C.A. § 588b(a), provides that "whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; * * * or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both." Section 102, chapter 29, Compiled Statutes of Nebraska 1929, provides that the term "felony" signifies an offense punishable by death or imprisonment in the penitentiary, and that any other offense shall be denominated a "misdemeanor"; and section 1212, chapter 28,

provides that any person who, with intent to defraud, shall make, draw, utter, or deliver any check or draft in excess of $35.00 upon any bank or other depository, knowing that he does not have sufficient funds in or credit with such bank or depository for its payment, shall upon conviction be fined not less than $100 nor more than $5,-000, or imprisoned in the penitentiary not exceeding seven years, or both, at the discretion of the court. The decisive question presented is whether the words "any felony," as used in subsection (a) of the federal statute, include felonies under state laws. If so, the court erred in discharging petitioner.

There are no common-law offenses against the United States. United States v. Hudson and Goodwin, 7 Cranch 32, 3 L.Ed. 259; United States v. Britton, 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698; United States v. Eaton, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591; United States v. Gradwell, 243 U.S. 476, 485, 37 S.Ct. 407, 61 L. Ed. 857; Donnelley v. United States, 276 U.S. 505, 48 S.Ct. 400, 72 L.Ed. 676; Wilson v. United States, 8 Cir., 77 F.2d 236; Fulbright v. United States, 8 Cir., 91 F.2d 210; Norton v. United States, 9 Cir., 92 F.2d 753. The criminal jurisdiction of the courts of the United States is derived exclusively from acts of Congress. Jones v. United States, 137 U.S. 202, 11 S.Ct. 80, 34 L.Ed. 691; Manchester v. Massachusetts, 139 U.S. 240, 11 S.Ct. 559, 35 L.Ed. 159; Kaufman v. United States, 2 Cir., 212 F. 613, Ann.Cas.1916C, 466.

But article 1, section 8 of the Constitution of the United States, authorizes Congress, inter alia, to borrow money on the credit of the United States, to coin money, and to enact all laws which shall be necessary and proper for carrying such powers into execution. That grant of national power is sufficiently broad in sweep to include the establishment of national banks, bank depositories, and other financial agencies needed for the fiscal operations of the government. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Osborn v. United States Bank, 9 Wheat. 738, 6 L.Ed. 204; Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 33, 34, 23 L.Ed. 196; First National Bank v. Fellows ex rel. Union Trust Co., 244 U. S. 416, 37 S.Ct. 734, 61 L.Ed. 1233, L.R.A. 1918C, 283, Ann.Cas.1918D, 1169; Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Norman v. Baltimore & Ohio Railroad Co., 294 U. S. 240, 302, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. Congress also has the power to enact legislation appropriate for the protection, preservation and regulation of such banks, bank depositories, or other agencies, and to make crimes acts which weaken them or impair their efficiency. United States v. Walter, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137; Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036; Doherty v. United States, 8 Cir., 94 F.2d 495, certiorari denied, 303 U.S. 658, 58 S. Ct. 763, 82 L.Ed. 1117. And a federal statute making criminal an act committed in connection with the operation or conduct of a national bank, a bank depository, or other similar fiscal institution is not open to objection on the ground that such an act already constitutes an offense under the laws of the state, as a single act may be criminal under the laws of both jurisdictions. Westfall v. United States, supra.

It has long been an offense under federal law for an officer, director, agent, or employee of a national banking association to embezzle, abstract, or wilfully misapply money, funds or credits of such banking institution, or to make false entries in its books, reports, or statements, with the intent to defraud, 12 U.S.C.A. § 592. But robbery of a national bank, or theft from it by others than officers, agents and employees, or other cognate offenses, were punishable only under the laws of the state in which the bank was situated. There was no federal statute making any of such acts punishable. Then came the Act of May 18, 1934, supra, 12 U.S.C.A. § 588a, et seq. It defines the term "bank" to include any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States; provides in section 2(a) that one who by force and violence or by putting in fear, feloniously takes or attempts to take from the person or presence of another any money, property or thing of value belonging to or in the care, custody, control, management or possession of a bank shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; provides in section 2(b) that one who, in committing or attempting to commit any offense defined in the preceding section, assaults another or puts his life in jeopardy by the use of a dangerous weapon or de-

vice, shall be punished as therein specified; provides in section 3 that one who, in committing any offense defined in the act or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing or attempting to free himself from arrest or confinement, kills a person, or forces a person to accompany him, shall be punished as therein fixed; and provides in section 4 that jurisdiction over any offense defined in the act shall not be reserved exclusively to courts of the United States. Section 333 of the Act of August 23, 1935, 49 Stat. 684, 720, 12 U.S.C.A. § 588a, enlarges the definition of the term "bank" to include any insured bank as defined in subsection (c) of section 12B of the Federal Reserve Act, as amended, 12 U.S.C.A. § 264(c). The Act of August 24, 1937, supra, followed. It enlarges section 2(a) in two respects. It provides that one entering or attempting to enter any bank with the intent to commit therein any felony or larceny shall be guilty; and that the taking and carrying away, with the intent to steal or purloin, any money or property belonging to the bank or in its care, custody, control, or management shall be punishable as therein specified. The original draft of the bill which became the amended act was prepared under the direction of the Attorney General. In his letter transmitting the proposed amendment to the Speaker of the House of Representatives, the Attorney General stated: "The act of May 18, 1934 (48 Stat. 783, U.S.C.A., title 12, secs. 588a to 588d), penalizes robbery of a national bank or a member bank of the Federal Reserve System. The class of banks protected by this statute was enlarged by section 333 of the act of August 23, 1935 (49 Stat. 720), to include all banks insured by the Federal Deposit Insurance Corporation. * * * The fact that the statute is limited to robbery and does not include larceny and burglary has led to some incongruous results. A striking instance arose a short time ago, when a man was arrested in a national bank while walking out of the building with $11,000 of the bank's funds on his person. He had managed to gain possession of the money during a momentary absence of one of the employees, without displaying any force or violence and without putting any one in fear—necessary elements of the crime of robbery—and was about to leave the bank when apprehended. As a result, it was not practicable to prosecute him under any Federal statute. * * * The enclosed bill which has been drafted in this Department proposes to amend subsection (a) of section 2 of the above-mentioned statute so as to include within its prohibitions, the crimes of burglary and larceny of a bank covered by its provisions. * * * I am informed by the Acting Director of the Bureau of the Budget that this legislation is not in conflict with the program of the President and I recommend its enactment." The Judiciary Committee of the House amended the bill. After the word "any" the committee inserted the words "felony or," and after the word "larceny" the words "or other depredation" were stricken. The report of the Committee contained the amendment, and the letter of the Attorney General was attached thereto, thus making clear the purpose of the measure in its original form, and the change in language effected by the amendments. The letter from the Attorney General was likewise attached to the report of the Judiciary Committee of the Senate. It is readily apparent that the Congressional objective was to make the statute very broad in scope and effect. And incorporating the laws of the state into those of the United States in respect to crimes committed at certain places was not bereft of precedent. Section 289 of the Criminal Code, 18 U.S.C.A. § 468, incorporated into the federal statute the criminal laws of the state with respect to crimes committed on property reserved or acquired by the United States for such purposes as post offices, forts, magazines, arsenals, dockyards, or other needful buildings.

Section 335 of the Criminal Code, 18 U.S.C.A. § 541, provides that all offenses punishable by death or imprisonment for a term exceeding one year shall be deemed felonies. But we think the language, the purpose, and the legislative history of section 2(a), as amended, all weighed and considered together, indicate a Congressional intent to make criminal the offenses of robbery, larceny, and other acts committed in a national bank and having relation to the protection, preservation and efficiency of such bank, which constitute a felony under the laws of the state in which the bank is situated.

The order is reversed and the cause remanded with directions to enter an order discharging the writ and to direct the issuance of proper process for the return of petitioner to the custody of the warden.

HUXMAN, Circuit Judge (dissenting).

I am unable to concur in the conclusion reached by the majority. There is no ambiguity in the words "any felony." They are all embracive. Standing alone, they denote not only felonies relating to banks and the currency, but are broad enough to include such felonies as murder, treason, kidnaping, and others. Words are, however, to be construed, if reasonably possible, so as to effectuate the intent of the law makers, and the meaning of words in a particular instance is arrived at, not only by a consideration of the words themselves, but by considering as well the purpose of the law and the circumstances under which they are employed. Puerto Rico v. Shell Co., 302 U.S. 253, 258, 58 S.Ct. 167, 82 L. Ed. 235. I have no difficulty in restricting the application of the words "any felony" to felonies that are crimes against national banks and the national currency. Congress was dealing with the currency and with national banks and was legislating with regard to their protection. It is reasonable to assume that when they used the phrase "any felony" they intended any felony affecting the currency or national banks.

Prior to the adoption of the federal criminal code in 1909, the federal statutes did not define the term "felony." It is well established by the federal decisions that we may not look to the state law in determining the meaning of the phrase "a felony," when that term is used in the federal statute. In Dolan v. United States, 8 Cir., 133 F. 440, 452, the court said: "By the general understanding in this country, a crime which may be thus punished is a felony, and it has required a great body of judicial opinions to settle finally that the term when used in the United States statutes must be confined to its common-law meaning, namely, an offense which is punishable by death or forfeiture of lands or goods. Considine v. United States [6 Cir.], 112 F. 342, 50 C.C.A. 272; Bannon v. United States, 156 U.S. 464, 15 S.Ct. 467, 39 L.Ed. 494; United States v. Coppersmith (C. C.) 4 F. 198."

In 1909 Congress adopted the federal criminal code and for the first time defined the term "felony." Sec. 541, 18 U.S.C.A., defines a felony as an offense punishable by death or imprisonment for a term exceeding one year. The necessary implication, of course, is that by offense is meant an offense against the federal law punishable by death or imprisonment for a term exceeding one year. Is it not reasonable to assume that thereafter when Congress used the term "felony," it had in mind the meaning which it theretofore had given to that term, namely, an offense against the United States, punishable by death or imprisonment of more than one year. And in the absence of a clear legislative intent showing that something else was meant, must we not conclude that when Congress used the term "any felony" in the Act under consideration, it meant felony as it had defined the term in the criminal code.

The section under consideration defines three specific crimes. The first is an offense in the nature of robbery; the second and third are offenses in the nature of grand and petit larceny. In none of them is entering or attempting to enter a bank building for the purpose of committing such crimes an element. So that if one entered a bank with the intent to rob by force and violence, or to steal from the bank, but after entering abandoned such intent without committing any overt act, he would not be guilty of an offense under the statute. This omission is provided for in the part of the statute under consideration. It provides that anyone who shall *enter or attempt to enter* a bank building for the purpose of committing any felony or larceny therein shall be guilty of an offense. With this provision in the statute, anyone who enters or attempts to enter a bank building with the intent to commit either of these specifically named felonies or any other felony against a bank or the currency would be guilty of a separate and distinct crime apart from those specifically named. This court held, in Alford v. United States, 113 F.2d 885, 887, that this provision created a separate and distinct offense in the nature of burglary, a crime not otherwise covered in the act. It we are to indulge in speculation as to the intent of Congress, this appears more logical and reasonable to me than to conclude that by one fell swoop Congress incorporated all the felonies of the forty-eight states and made them offenses against federal law.

The majority bottoms its decision on the ground that Congress intended by reference to incorporate the state penal statutes relating to banks into the federal law and thereby make such offenses federal offenses. Unquestionably Congress had power to do this. It is, however, only in exceptional cases that such method has been employed. The ordinary and customary way in which Congress proceeds is by enacting a statute

378

dealing directly with the subject under consideration, and there is reason for this. If the indirect method were generally adopted, it would lead to much confusion. One would never know what constituted an offense against the government until he had searched not only the federal statutes but also those of the forty-eight states of the Union.

As has been said, Congress has power to incorporate, by reference, state offenses into the federal penal statutes and thereby make them federal offenses. But such incorporation does not follow merely because Congress has the power. Congress must not only intend to incorporate by reference, but must use appropriate language evidencing intent so to do. In those rare instances in which the indirect method of legislation by incorporation has been employed, Congress specifically evidenced its intention so to do by providing in the law for such incorporation.

There is yet another principle of law we must not overlook in considering this question. Without exception it is held that a penal statute must be strictly construed. United States v. Reese, 92 U.S. 214, 219, 23 L.Ed. 563; United States v. Wiltberger, 5 Wheat. 76, 85, 5 L.Ed. 37. Nothing is a crime unless specifically made so by statute. Crimes do not arise by implication. This is a cardinal principle of our system of jurisprudence—an inviolate safeguard that we have thrown around the individual to protect him in his life, liberty and freedom.

Had Congress intended to incorporate state offenses against banks into this statute and thereby make them offenses against the federal government, it would have been very simple to have done so. All that would have been required would have been to add to the phrase "any felony" the words "under either the state or federal law," or other appropriate language.

To my mind, the interpretation of the majority violates not only every principle of criminal statutory construction, but also the general principles of construction by which we seek to ascertain legislative intent or purpose. I fail to find anything in the report of the Attorney General, or of the Committee, in the title of the Act, or in a single word therein, from which it can be concluded that Congress intended to incorporate state felonies into this Act and make them federal offenses.

For these reasons, I respectfully dissent.