THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ·GERARDO DE JESÚS VÉLEZ, Defendant and Appellant.

No. 13526. Argued January 21, 1949.—Decided May 26, 1949.

*José Rafael Gelpí* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The appellant was sentenced to six months in jail for a violation of "An Act to Declare a Public Nuisance the Games Generally Known as *Bolita, Bolipool,* etc.", approved May 15, 1948 (page 738). The charge was that on June 16, 1948, in the city of Mayagüez, and upon his residence being searched, on a warrant, he had in his possession fifty tickets or slips of *bolipool* and also lists of numbers and letters which are utilized or may be used in said unlawful games of *bolita* and *bolipool,* or combinations connected with the pools or *bancas* of the racetracks of Puerto Rico and clandestine lotteries.

In support of this appeal, appellant raises three questions, namely: (*a*) lack of jurisdiction; (*b*) error in the admission of certain evidence; and (*c*) that § 4 of the aforesaid Act is unconstitutional.

I

The alleged lack of jurisdiction consists in the failure to prove the place where the offense was committed. Indeed, the only witness who testified in this case made no reference to the location of the house searched. It was not stated to what court belonged the judge who issued the search warrant but it was testified that on June 16, 1948 and under a search warrant issued by Víctor Brignoni, Judge of the Municipal Court, the witness proceeded to search the residence of Gerardo De Jesús Vélez. The Judge of the District Court of Mayagüez could take judicial notice of the fact that on the day stated Víctor Brignoni was Municipal Judge of

Mayagüez. Since pursuant to § 2 of said Act No. 220, a municipal judge has no jurisdiction to issue search warrants to be executed outside his jurisdiction; and pursuant to § 464 of the Code of Civil Procedure it is presumed that an official duty has been regularly performed, the lower court correctly presumed that the residence searched by virtue of an order issued by the Municipal Judge of Mayagüez is situated within the Municipal Judicial District of Mayagüez and consequently within the jurisdiction of the lower court. As the implements were seized in the house searched and since the possession thereof constitutes the offense charged, it was indirectly proved that the offense was committed within the judicial district of Mayagüez. It was not necessary to prove the jurisdiction by direct evidence. *People* v. *Reyes*, 56 P.R.R. 439; *People* v. *Andino*, 55 P.R.R. 68: Underhill Criminal Evidence, 4th ed., § 96, page 116.

## II

■■ The second question alleged by the appellant consists in that the court permitted a witness to testify, over his objection, as to the character of the defendant and as to his having been sentenced for a misdemeanor. Appellant is not quite accurate in stating this point. As the record shows, the following took place:

"DEFENSE: May it please the court, tell me, Merle, are you sure that this was being used that day? When I say 'this' I mean a ticket in favor of the Asylum for the Poor. A.—It may be used. Q.—And this may be used and was being used on that day? A.—It was being used because Gerardo De Jesús Vélez is known and has a reputation in Mayagüez . . . Q.—Please do not testify as to his character . . . A.—He has been convicted; yes, sir, he has been previously sentenced in Mayagüez. DEFENSE: I move that it be stricken. DISTRICT ATTORNEY: He is answering the question of my colleague. THE COURT: Overruled. DEFENSE: I take exception of the decision of the Court on the ground that prior convictions of the defendant for misdemeanors cannot be admitted in evidence; and on the additional

ground that the attorney objected from the beginning and the witness insisted in testifying as to the facts . . . THE COURT: The court admits the question and does not sustain the objection because the answer is the *best way of identifying the defendant.*" (Italics ours.)

If it had been a trial by jury a proper instruction of the court to disregard that testimony would have cured the error. *A fortiori,* since it was a trial by the court, appellant's contention is rather unfounded. The evidence of which appellant complains was introduced in answer to defendant's question. It was not that the district attorney tried to prove the character of the defendant nor did the court believe so, as in overruling the objection it voiced its intention of accepting the evidence, not as proof of his character but in order to identify the defendant. Technically the court erred in not ordering that it be stricken but since this caused no prejudice to the defendant, the ruling is not reversible error.

### III

■■ Section 4, alleged to have been violated and whose constitutionality is challenged by the appellant, provides in its pertinent part, as follows:

"Section 4.—Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements *which can be used* for the unlawful games of *bolita, bolipul,* combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or *any other similar ones* which may be utilized or used in said unlawful games *or connected with the practice thereof,* shall be guilty of a public offense . . .". (Italics ours.)

The appellant cites no authority to support the alleged unconstitutionality of the Act. However, he argues that this Section is unreasonable and that it affects the right to property and individual liberty. In support of his theory he says that under that Section any person who carries, trans-

ports or has in his possession any paper, notebook, ticket, etc., commits a crime inasmuch as those items may be utilized for the game of the *bolita;* that by merely writing a number of three figures in any piece of paper that is being carried, the law is violated; and that the offense is likewise committed by carrying a blank piece of paper as it may be utilized in the future for filling it with figures which are used for the game of the *bolita.* In other words the contention of the defendant seems to be that § 4 defines the offense vaguely and indefinitely and hence that it is unconstitutional.

The Act in question, by its first Section, declares a public nuisance the games generally known as *bolita* or *bolipool.* The efforts to erradicate this social evil which causes so much harm especially among the lower class who as a general rule are mostly interested in this game, are well known. To achieve this end the Legislature has tried to attack the evil the best it could. It was not practical to use a language too specific. It would have been most difficult, if not impossible, for the Legislature to foresee all the ingenious combinations and devices to which the violators of the law would resort in order to get around it.

██ The rule that criminal statutes must be strictly construed in favor of the accused, does not require that the words of an enactment be given their narrowest meaning or that the lawmaker's intent be disregarded. To correctly construe an Act, the legislative intent should be sought, not in an isolated phrase or in one of its sections but in the contents of the whole statute keeping in mind the legislative purpose. *Donnelley* v. *United States,* 276 U. S. 505 (1928) and *United States* v. *Giles,* 300 U. S. 41 (1937).

The interpretation suggested by the appellant to the effect that the mere act of carrying a paper or a blank notebook constitutes a violation of § 4, is unreasonable. No court would construe the statute in that way.

If we adhere to the language of § 4, we get the impression that to merely carry, transport, use or possess any imple-

ment *which may be utilized* for the unlawful games of the *bolita, bolipool*, etc., constitutes a violation of the Act. The intent of the Legislature in using the phrase "which may be utilized" was not to prohibit the carrying, using, transporting or possessing any object susceptible of innocent use. Its intention was to prohibit the carrying, using, transporting or possessing those objects when they have been utilized or are being utilized in connection with such games.

In our opinion the statute is not vague or indefinite.[1] The judgment will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[1] In connection with this matter see *United States* v. *Petrillo*, 332 U. S. 1 (1947); Ralph W. Aigler, Legislation in Vague or General Terms, 21 Mich. Law Rev. 831 and 62 Harv. Law Rev. 77.