UNITED STATES *v.* KOCH.

*(Circuit Court, E. D. Missouri, E. D.  September 27, 1889.)*

TRADE-MARKS—STATUTES—REVIVAL.

In 1870 congress passed a statute providing for the registration of trade-marks, and in 1876 a statute imposing penalties for trespass upon the rights obtained by such registry. The statute of 1870 having been declared unconstitutional, in 1881 a valid statute was enacted, touching the same subject, which did not re-enact the penal statute of 1876, and made no reference thereto. *Held,* that the penal statute fell with that of 1870, and did not remain suspended, to become operative under the statute of 1881.

At Law.  On demurrer to indictment.

*George D. Reynolds,* U. S. Dist. Atty., and *Warwick M. Hough,* for plaintiff.

*John M. Holmes,* for defendant.

BREWER, J.  This is an indictment under the trade-mark statutes of the United States. The indictment was certified up from the district to this court, and to it there has been filed a demurrer. On the argument of that demurrer many questions were presented. I shall notice but one.

The history of trade-mark legislation is this: In 1870 congress passed a statute providing for the registration of trade-marks,—a statute general in its operation. In 1876 it passed another statute imposing penalties for trespass upon rights obtained by the registering of trade-marks. Under those statutes indictments were found, and, on a certificate of division of opinion between the district and circuit judges, cases came to the supreme court, and in what is known as the *Trade-Mark Cases,* reported in 100 U. S. 82, the supreme court decided that the act of 1870 was beyond the power of congress. It suggested in the opinion that under the "commerce clause," perhaps, congress had the power to legislate with reference to trade-marks used in commerce between this country and foreign nations, between the states, and with the Indian tribes. Immediately thereafter the act of 1881 was passed by congress, providing for the registering of trade-marks which might be used in foreign commerce and commerce with the Indian tribes. It did not re-enact the penal statute of 1876, and the act of 1881 contains no direct reference to that penal statute.

Now, the contention of the government is that although the act of 1870 had no existence,—never had any, having been declared beyond the power of congress,—and that although by reason of that fact the penal statute of 1876 had nothing upon which it could operate, yet it stood as a valid enactment, suspended in operation until the act of 1881, providing for trade-mark registration, when it was vivified, and became an act imposing penalties for trespass upon rights given by the act of 1881.

In the *Trade-Mark Cases,* Mr. Justice MILLER closed the opinion of the

court with some reference to the penal statute of 1876, and his language is this:

"While we have, in our references in this opinion to the trade-mark legislation of congress, had mainly in view the act of 1870, and the civil remedy which that act provides, it was because the criminal offenses described in the act of 1876 are, by their express terms, solely referable to frauds, counterfeits, and unlawful use of trade-marks which were registered under the provisions of the former act. If that act is unconstitutional, so that the registration under it confers no lawful right, then the criminal enactment intended to protect that right falls with it."

Now that language is general, comprehensive, and if taken in its ordinary meaning, and as respecting a matter then rightfully before and rightfully passed upon by the supreme court, it is a decision of that court that the penal act of 1876 fell with the civil act of 1870. But it is contended by counsel that the language does not require such interpretation; that all that was pending, and therefore all that was meant to be decided, was that the penal act had then no force,—nothing to act upon,—because the civil act which it was passed to uphold had no existence. Assuming that that is true, and that the question has never been considered and decided by the supreme court as now presented,—for the act of 1881 had not then been passed,—a question arises whether a penal statute can be upheld denouncing trespass upon a merely statutory right, when there is in existence no such statutory right, and when whether there shall ever be depends upon the will of succeeding congresses. It would not be doubted that if an act were passed giving a statutory right, and in the same act was a section imposing penalties for trespass thereupon, when the portion of the act giving the right fell, the whole statute would fall. And is the rule any different when the penal provisions are in an independent statute enacted by a subsequent legislature? Of course statutes having reference to the same subject-matter, though enacted at different times, are to be considered as *in pari materia*, and this is thus laid down by Dwarris in his work on Statutes, (Potter's Dwar. St.) p. 189: "It is therefore an established rule of law that all acts *in pari materia* are to be taken together as if they were one law; and they are directed to be compared in the construction of statutes, because they are considered as framed upon one system, and having one object in view;" citing certain cases. "If one statute prohibit the doing a thing, and another statute be afterwards made whereby a forfeiture is inflicted upon the person doing that thing, both are considered as one statute." *Stradling* v. *Morgan*, 1 Plow. 206.

That fits this case. Where the right is created by one statute, and the penalty inflicted by a subsequent, they are to be considered as one statute.

But it is said that the first statute never had any existence. We are to look at this question as if there had been only the penal statute enacted. Now, if valid, whether such a penal statute has any operative force depends upon subsequent legislation. It cannot be doubted that congress may legislate with reference to the happening of future events. Its

legislation may be prospective, and contingent upon future events. In case of a civil war congress might pass, doubtless, a valid enactment that upon the close of that war certain taxes should be collected. But the condition in this case is not something depending upon outside and probable occurrences; it is a condition depending entirely upon the will of succeeding congresses. There is no succession of time, no possible change in outward events that can bring the condition to pass. It is a condition that depends solely upon the succeeding congress. If such legislation be not absolutely invalid, it is certainly very unfortunate.

Further than that, while the act of 1870 was a nullity, it must be assumed as a matter of fact that in framing the act of 1876 the penalties imposed were with reference to the terms of the statute of 1870. Can it be assumed that congress would have imposed such penalties upon trespasses upon the registration of trade-marks, if the broad, general, and comprehensive act of 1870 had not been supposed to be in force? In this trade-mark case it was pressed upon the supreme court that, as congress had power to legislate in reference to trade-marks in limited cases, the court should uphold the statute as good in reference to such cases; but it properly answered that it could not assume that if congress had known that it had no general power, but only in limited cases, it would have passed any act. So, and with more force, must it be held that if congress is legislating in respect to penalties upon the theory that it has general and comprehensive power, it cannot be assumed that it would impose the same penalties, provided it knew that it only had a limited and narrow power.

Again, when the act of 1881 was passed, if congress had intended that penalty should be imposed for a trespass upon the rights conferred by that statute, or if it had intended that the act of 1876 should be revivified and operate upon the act of 1881, it was very easy to say so. Its silence in this respect is cogent evidence that it did not understand or intend that the penal statute should be considered a part of present and valid law. And that assumption is strengthened by the fact that it had before it for consideration this passage from the opinion of the supreme court in which it is broadly stated that the act of 1876 had fallen with the act of 1870. Whatever may be true as to the full meaning of that decision, or as to the general power of congress to impose penalties for trespasses upon rights having no existence, it had before it the general affirmance by the court that the law of 1876 had fallen, and it must be assumed that if it meant that it should stand and be vivified, or that any penalties should be imposed for violations of the law of 1881, it would have so stated.

These considerations convince me very strongly that the act of 1876 has, as the supreme court said, fallen with the act of 1870, and it is as much a dead letter as the act of 1870, and was not vivified or given operative force by the act of 1881. Of course in that view of the law the demurrer will be sustained. I have not considered the other questions raised by the demurrer. Expressing my opinion upon this one must not be taken as implying any dissent from the views expressed by my

Brother THAYER in the opinion heretofore filed by him. *U. S.* v. *Braun*, 39 Fed. Rep. 775. I have chosen to rest my opinion upon this question of the invalidity of the act of 1876, because, if that be true, there can be no remedy by changing the form of the indictment. There being no penal legislation by congress, there can be no indictment found.