In re COLUMBIA TOBACCO CO.

ROSEN v. UNITED STATES FIDELITY & GUARANTY CO. et al.

In re SHOLDER et al.

HANDELSMAN v. FIDELITY & CASUALTY CO. OF NEW YORK.

Nos. 352–374.

Circuit Court of Appeals, Second Circuit.

July 10, 1941.

William Walzer, of New York City (Raymond Gitlin, of New York City, of counsel), for appellant.

William J. McArthur, of New York City (Robert Gray, of New York City, of counsel), for appellee United States Fidelity & Guaranty Co.

Harry Malter, of New York City, pro se and for appellee Goldman, Malter & Goldman.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

These are appeals from orders of the District Judge revising orders of referees in bankruptcy, and granting priority as tax claims, under section 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4), to the claims of appellees against the bankrupt. Appellees argue that they have succeeded by way of subrogation to whatever priority the City and State of New York may assert against the bankrupts.

The State of New York, by section 471 of the Tax Law, imposes a tax upon the possession, in the State, of cigarettes for sale. The statute makes all dealers liable for the tax, which is to be paid by purchasing adhesive stamps from the State. Wholesale dealers are authorized to purchase stamps and affix them to packages of cigarettes, thus relieving the retail dealer of that duty; and, for the services of wholesale dealers in selling and affixing the stamps, the tax commission is authorized to pay as compensation a percentage of the value of the stamps. Such wholesale dealers, who are called "agents", are permitted to purchase stamps on credit, providing they furnish a bond to protect the State against loss. One of the bankrupts, Columbia Tobacco Company, Inc., secured its appointment as such an agent under the Tax Law, and procured the United States Fidelity & Guaranty Company to write a "performance" bond and two "credit" bonds as required by the statute and by the State Tax Commission. At the time of its adjudication, the bankrupt owed the State $2,992.50 for stamps purchased on credit. This amount was paid by appellee Fidelity Company. It paid an additional $818.04 which was assessed by the State for bankrupt's failure to account as agent. Against this amount of $3,810.54, it applied $400 in cash which had been deposited as collateral and $580.49 of a bank account deposited as collateral by Morris and Gertrude Grossman. The latter account had been assigned by the Grossmans to Harry Malter and Goldman, Malter & Goldman. The surety company filed a claim for the balance, $2,830.05, and the assignees make a claim for $580.49; both assert that they are entitled, by subrogation, to the rights of the State under section 64, sub. a(4).

The City of New York, by Title T. of Chapter 41 of the City Administrative Code, as added by Loc.Laws N.Y.1938, p. 285, imposes a tax on the sale of cigarettes at retail, making all dealers liable for the payment of the tax by the purchase of stamps. As in the case of the State, wholesale dealers are eligible to appointment as agents, and are entitled to affix such stamps and to receive compensation for their services. To obtain credit from the City for the purchase of stamps, the Columbia Tobacco Company procured a bond from the American Surety Company, and Gertrude Grossman deposited, as collateral, $2,000 in bonds of the Tri-Borough Bridge Authority. At the time of its adjudication, Columbia Tobacco Company owed the City $2,000 for stamps purchased on credit, which, on demand, the surety paid. It then sold the bonds deposited with it as collateral. Appellee Harry Malter and Goldman, Malter & Goldman, as assignees of Grossman, succeeded to her rights against the surety company and, by further assignment, to its right of subrogation to the City's rights. They seek priority for their $2,000 claim.

The appeal from the Sholder proceedings raises an identical issue, involving the claim by the Fidelity & Casualty Company in the amount of $3,850, which it paid to the City to discharge the bankrupt's obligation for stamps purchased on credit. At the time of the adjudication, bankrupt had some unused stamps on hand, which were sold by the trustee for $130.

It is clear that, in each of these cases, the bankrupt's obligation to pay for the stamps was a tax liability and gave rise to a claim for taxes. City of New York v. Feiring, May 26, 1941, 61 S.Ct. 1028, 85 L.Ed. ——; New York City v. Goldstein, 299 U.S. 522, 57 S.Ct. 321, 81 L.Ed. 384. That the agent is referred to as a "purchaser" who is liable for a "debt", is immaterial; the nature of the imposition and not its label is the decisive factor. Cf. New Jersey v. Anderson, 1906, 203 U.S.

 

483, 490, 491, 27 S.Ct. 137, 51 L.Ed. 284; United States v. Updike, 281 U.S. 489, 494, 50 S.Ct. 367, 74 L.Ed. 984. It has "all the characteristics of a tax" because it "is a pecuniary burden * * * for the support of government", imposed "without" the "consent" of the person upon whom it is laid.

■ In the Sholder case, a small amount ($130) of the $3,850 claim related to an obligation to pay for stamps, which had not been used by the bankrupt when the bankruptcy proceedings were begun; the bankrupt had a right to redeem those unused stamps, but that was like a right to a tax rebate; accordingly, we regard the bankrupt's obligation to pay for the unused stamps as a tax liability.

■ Claims for taxes owing by the bankrupt to a State or a City are entitled to priority under Section 64, sub. a(4) of the Bankruptcy Act. It follows that appellees, via subrogation, were entitled to priority. Section 57, sub. i of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. i, provides: "Whenever a creditor whose claim * * * is secured by the individual undertaking of any person fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking * * * he shall be subrogated * * to the rights of the creditor". The terms "claim" and "creditor" are there used without limitation, and there is no good reason for believing that Congress intended that those words should not include the claim of a State or a City as a creditor. Had Congress intended otherwise, "it would have been very easy to say so";[1] elsewhere in the statute, when Congress desired to differentiate such claims from others, it named them separately. See sections 57, sub. j and 64, sub. a(4). And the rights of the State and City clearly include their "rights" to priority under Section 64, sub. a(4). In re Baltimore Pearl Hominy Co., 4 Cir., 1925, 5 F.2d 553.

In the Columbia Tobacco proceeding, the referee offset against the claim of $2,830.05 filed by the United States Fidelity & Guaranty Company the amount of $1,190.65, determined by him as the value of a life insurance policy held by it as collateral for the bonds. This part of the referee's order was affirmed by the District Judge. We find no error in his action.

The orders of the District Court are affirmed.

---

[1] For cases applying the "it-would-have-been-very-easy-to-say-so" rule, see Farrington v. Tennessee, 1877, 95 U.S. 679, 689, 24 L.Ed. 558; Union Natl. Bank v. Matthews, 1878, 98 U.S. 621, 627, 25 L.Ed. 188; Baltimore & P. R. R. Co. v. Grant, 1878, 98 U.S. 398, 403, 25 L.Ed. 231; Vicksburg, S. & P. R. R. Co. v. Dennis, 1886, 116 U.S. 665, 670, 6 S.Ct. 625, 29 L.Ed. 770; United States v. Chase, 1890, 135 U.S. 255, 259, 10 S. Ct. 756, 34 L.Ed. 117; United States v. Koch, 40 F. 250, 252, 5 L.R.A. 130 (Brewer, J. in Circuit Court. E.D. Mo. 1889); Harrington v. Herrick, 9 Cir., 1894, 64 F. 468, 471; Central Real Estate Co. v. Commissioner, 5 Cir., 1931, 47 F. 2d 1036, 1037.