HUDSPETH, Warden, United States Penitentiary, Leavenworth, Kansas, v.
TORNELLO.

No. 2423.

Circuit Court of Appeals, Tenth Circuit.

May 5, 1942.

Rehearing Denied May 22, 1942.

Summerfield S. Alexander, U. S. Atty., of Topeka, Kan. (Homer Davis, Asst. U. S. Atty., of Topeka, Kan., on the brief), for appellant.

E. R. Sloan, of Holton, Kan., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The grand jury of the United States Court for the Middle District of Tennessee returned an indictment against William Humbert Tornello, hereinafter referred to as petitioner, in which it was charged that he entered the building occupied and used by the Third National Bank of Nashville, Tennessee, with the intent to commit therein a certain felony, namely, uttering and cashing a forged check in the amount of $119, defrauding and depriving the bank of its funds in that amount, and appropriating the same to his own use and benefit. Petitioner was found guilty and sentenced to a term of three years in the penitentiary, to run concurrently with a term then being served under sentence by the United States Court for Colorado, and to pay a fine of $750. Commitment issued and petitioner was placed in the United States penitentiary at Leavenworth, Kansas, for service of such sentence.

While so confined, petitioner filed in the United States Court for Kansas his petition for the writ of habeas corpus in which he challenged the validity of the judgment and sentence of the court in Tennessee on the ground that the indictment failed to charge any offense under the laws of the United States. The court in Kansas ordered petitioner discharged and the warden appealed.

The decisive question of law presented was determined in the recent case of Hudspeth v. Melville, 10 Cir., 127 F.2d 373. It would not serve any useful purpose to repeat in substance that which we said there. It is sufficient to say that we adhere to the views there expressed.

On the authority of Hudspeth v. Melville, supra, the order is reversed and the cause remanded with directions to enter and order discharging the writ and directing the issuance of appropriate process for the return of petitioner to the custody of the warden.

HUXMAN, Circuit Judge (dissenting).

I cannot agree with the conclusion reached in this case by the majority. Inasmuch as the decision in this case is predicated on the majority decision in Hudspeth v. Melville, in addition to what is said here, I adopt and make a part of this dissent my views expressed in the Melville case.

The majority opinion in the Melville case is bottomed on the power of Congress to legislate for the protection of national banks and the national currency. It holds that the Congressional purpose in including the challenged part of the Act was to protect national banks and the currency by making it an offense against the United States to cash a no-fund check in a national bank. But under the decision of the majority cashing such a check would not be an offense under the federal law unless the state had made it an offense against the state law. It seems to me to be a

strained and unreal construction to hold that cashing a no-fund check in a national bank endangers the bank and the currency only if such an act is an offense against the state law. Are we not adopting a strained construction when we ascribe to Congress an intent to make the protection of national banks and the currency dependent on whether an act was an offense against the law of the state?

If we assume that by this provision Congress intended to protect national banks, we must presume that it intended to protect all of the national banks in all of the states. Certainly no one would ascribe to Congress an intent to protect banks in one state against no-fund checks but subject the currency in the banks of another state to all the hazards of the check artist. yet this is just what would flow from the construction placed on the act by the majority. In the state which made it an offense against its law to cash or give a no-fund check, one who cashed such a check in a national bank would be guilty of an offense against the federal government, but if he cashed such a check in a national bank in a state where such an act was not a state offense, he would be a law abiding citizen as far as the federal law was concerned. Or, if one state made issuing a no-fund check a felony and another made it a misdemeanor, the national banks in the former would be protected but one could cash such a check with impunity in the national banks of the latter state.

A criminal law must have universal application within the boundaries of the nation. A law which would make an act an offense if committed in one place but lawful if committed in another would, in my view, be unconstitutional and void unless there was a reason for such classification, and of course there is none such here.

It appears to me that there is only one construction under which the constitutionality of the challenged part of the act can be sustained, if at all. The statute defines three separate offenses. The first is an offense in the nature of robbery, the second and the third are offenses in the nature of grand and petit larceny. In none of them is entering or attempting to enter a bank for the purpose of committing them an offense, so that if anyone entered a bank with the intent of doing any of the forbidden acts, but abandoned his intent without committing an overt act, he would be guilty of no offense. This omission would be supplied if we construe the challenged part of the act to mean that anyone who enters a national bank with the intent to commit there any felony or a larceny—that is, any of the felonies or petit larceny as herein defined—shall be guilty of a separate offense. This construction is the only one which in my view squares with the requirement that criminal laws must have general application or with Congressional intent to protect the currency.