## UNITED STATES v. JEROME.

### Nos. 340, 341.

Circuit Court of Appeals, Second Circuit.

July 17, 1942.

Writ of Certiorari Granted and Denied

Oct. 12, 1942.

See — U.S. —, 63 S.Ct. 62, 87 L.Ed. —.

Louis Lisman, of Burlington, Vt. (George L. Agel, of Burlington, Vt., on the brief), for appellant.

Joseph A. McNamara, U. S. Atty., of Burlington, Vt. (Bernard J. Leddy, Asst. U. S. Atty., of Burlington, Vt., on the brief), for appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

These are appeals by the defendant from two judgments of conviction and imprisonment rendered against him upon successive jury verdicts based upon two separate indictments. The first indictment, based upon 12 U.S.C.A. § 588b, charged that defendant entered a national bank, a member of the Federal Reserve System, with intent to commit in such bank a felony, to wit, that of knowingly and with intent to defraud the bank uttering and publishing as true to the bank a promissory note upon which, as he knew, there was a forged endorsement. The second, based upon 18 U. S.C.A. § 753h, charged that, while in custody of the United States marshal for the District of Vermont under a warrant for the above charge, defendant escaped from the marshal's custody. In each case the issue is the appropriate construction of the cited federal statute.

On July 14, 1941, defendant, then a captain in the United States Army stationed at Fort Ethan Allen, Vermont, entered a national bank in Burlington for the purpose of borrowing $500. He was told that before the loan could be made he would have to procure the endorsement of another army officer of at least equal rank, and a note was prepared for his use. Later in the same day he returned waving the note

in the air and saying that he had done better, for he had "a major's signature." The note, bearing the signatures of defendant and of Henry S. Derby, Major, 71st Field Artillery Brigade, was discounted by the bank. It has never been paid, except that a small credit in the defendant's account at the bank was applied on it at the due date. At the trial Major Derby testified that, while he had been at Fort Ethan Allen just prior to July 14 and returned there shortly later, yet actually on that date he was at Fort Sill, Oklahoma; that he never signed the note or authorized the use of his name; that he first knew that his name appeared on the note when the bank notified him of its nonpayment on the due date; and also that while he was at the Fort his signature was readily accessible to any one there. These were the facts upon which the first conviction was based. The second conviction was based on proof that, being apprehended in Reno, Nevada, and delivered to the marshal for the District of Vermont on proper process on October 23, 1941, he escaped on November 15, 1941, from the Rutland County Jail, to which he had been committed by the marshal for safekeeping. He was later apprehended in San Antonio, Texas.

I. That part of 12 U.S.C.A. § 588b which is here involved was enacted in 1937 as an addition to the Bank-Robbery Statute of 1934. It reads: "Whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part therof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." Sec. 8485 of the Public Laws of the State of Vermont, read in connection with Sec. 8484, provides that a person who utters and publishes as true a forged promissory note, knowing it to be forged, with intent to injure or defraud a person, shall be subject to a fine and to imprisonment in the state prison for not more than ten years, a penalty which under Sec. 8750 makes the offense a felony. The court below has held, in accordance with the majority view in the Tenth Circuit, Hudspeth v. Melville, 127 F.2d 373; Hudspeth v. Tornello, 128 F.2d 172, that the word "felony" in the federal statute

quoted includes a state offense such as that here in question. Although some contention is made of a lack of evidence to show knowledge on defendant's part, that claim is obviously unfounded; and if the court's view of the statute is correct, the evidence clearly sustained the conviction.

Defendant, following the dissenting opinion in the Hudspeth cases, argues that the word "felony" does not apply to the state offense here relied on. His two positions, believed to be somewhat conflicting, as pointed out below, are that it means either a felony as "defined" in the Criminal Code or one affecting the currency or national banks. This "definition" is more accurately a classification of crimes, along the usual lines of distinction between felonies and misdemeanors, found in 18 U.S.C.A. § 541: "All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. All other offenses shall be deemed misdemeanors."

Prior to 1934, while it was an offense under federal law for any officer, director, agent, or employee of a national bank to embezzle or extract funds from the bank, 12 U.S.C.A. § 592, yet robbery or theft from it by others than such employees was punishable only under state laws. Since the states seemed to be increasingly unable to protect themselves against gangs of interstate bank robbers, Attorney General Cummings in 1934, as one of a series of extensive federal criminal statutes then proposed by him[1]—his so-called twelve-point program of federal crime control—recommended the legislation which was passed as the Bank-Robbery Statute. 12 U.S.C.A. §§ 588a–d. In its first section, now § 588a, this statute defined the term "bank"; by amendment of 1935, this now includes not only members of the Federal Reserve System, but all insured banks as defined in 12 U.S.C.A. § 264(c). In its second section, § 588b, as originally passed, it provided in subdivision (a) for punishment of any one who, "by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank." That is, as its title

---

[1] Ann.Rep.Atty.Gen.U.S., 1933, p. 1, 1934, pp. 1, 61–64, 1935, pp. 1, 56; Proceedings Atty. Gen.'s Conf. on Crime, 1934, 302, 332; Chamberlain, Federal Criminal Statutes, 1934, 20 A.B.A.J. 501; 48 Harv.L.Rev. 489; 1 Law & Contemp. Prob. 399, 448; 21 Va.L.Rev. 568, 572.

discloses, it defined the offense of "robbery of bank." The amendment of 1937 added to this subdivision the provision quoted above, as well as other provisions referred to below. Subdivision (b) defined the offense of "assault in committing or attempting to commit bank robbery." A third section, now § 588c, applied to "killing or kidnapping as incident to robbery," while § 588d, a fourth section, provided that "jurisdiction over any offense defined by sections 588b and 588c of this title shall not be reserved exclusively to courts of the United States." [2]

The 1937 amendment also came about through recommendation of Attorney General Cummings, who under date of March 17, 1937, wrote Speaker Bankhead the reasons for amending the Bank-Robbery Statute to "include larceny and burglary" and set forth a draft of a bill. The bill was introduced by Representative Sumners of Texas and was promptly recommended favorably by the House Judiciary Committee with a report, H. R. Rep. No. 732, 75th Cong., 1st Sess., April 30, 1937, which quoted, and agreed with, the Attorney General's letter. One member made an objection to the possible severity of the bill, as pointed out below, 81 Cong.Rec. 4656; whereupon the Committee suggested an amendment, and the amended bill was passed by the House, June 7, 1937. 81 Cong.Rec. 5376, 5377. In the Senate the Committee on the Judiciary promptly reported accepting and quoting the House Committee's Report, including the Attorney General's letter, Sen.Rep.No. 1259, 75th Cong., 1st Sess.; and the amended bill was soon passed without dissenting voice and signed by the President, August 24, 1937.

The scope of the bill, as proposed by the Attorney General and as considered in the House, shows its purpose and, as we believe, clearly demonstrates that it was intended to include common-law or state felonies. The Attorney General's letter—quoted in full at page 376 of 127 F.2d—states that "the fact that the statute is limited to robbery and does not include larceny and burglary has led to some incongruous results." It continues with the "striking instance" of a man who was walking out of a bank with $11,000 of the bank's funds on his person, possession of which had been gained without force during a momentary absence of a bank employee, and federal prosecution could not be had. It further states that the enclosed bill, drafted in the Department, proposed to amend the statute "so as to include within its prohibitions, the crimes of burglary and larceny of a bank covered by its provisions."

The bill as submitted by the Attorney General contained the words "any larceny or other depredation" where the words "any felony or larceny" now appear. This obviously all-inclusive language was objected to on the floor of the House because it would put simple larceny on the same plane as robbery and breaking and entering in an attempt to commit larceny, and that "if a man should go into a bank to make a deposit and pick up a pencil and walk out with it, he would be on the same plane, according to this bill, as a man who deliberately broke in during the nighttime and committed larceny." The objecting Congressman also pointed out that "breaking and entering is a crime in and of itself." 81 Cong.Rec. 4656. This led to the Committee's amendment of the bill to add "felony" before "larceny" and strike out "other depredation." [3] So far, however, from changing the general broad scope of the bill except for this one item of eliminating the undoubted severity of punishment for minor matters, the bill throughout remained one "to amend the bank-robbery

---

[2] As this legislation was originally proposed, it also defined two other offenses: one, that of carrying away property of the bank, which may be compared with the amendment of 1940 adding § 588c, referred to below; the other, the offense of breaking into or attempting to break into any building or part thereof used as a bank with intent to commit any offense defined by that act or any felony under federal or state law. Though the Senate passed the bill, the House struck out these two provisions, desiring to limit the legislation more closely to offenses against banks. 1 Law & Contemp. Prob. 448. Both houses voted to adhere to their positions, and it took a committee of conference of the two houses to induce the Senate to yield. 78 Cong.Rec. 8132, 8778, 8855–8857. It should be noted that when the Attorney General came to renew his proposal in 1937, he made use of the same idea and, in part, of similar language, but he broadened the proposal to include "any * * * depredation."

[3] The other change in the bill is stated in note 5, infra.

statute to include burglary and larceny," and was finally passed with this title. 50 Stat. 749, 12 U.S.C.A. § 588b.

It should be noted that if defendant's contention is correct, one of the two crimes so stressed throughout all these proceedings, to wit, burglary, is in no manner covered by the result. We have seen no answer to this clear fact that the reiterated statement of their intent by the proponents of the measure will be partially defeated if the broad and general language of the statute is to be restrictively construed. It will then be dangerous for federal officers to seize a man while he is breaking into a bank; they must wait and see what his ultimate plans are.

■ Moreover, there are other considerations which point away from so narrow a construction of the legislation. Thus, the whole basis of this statute in its original and its amended form is that of building upon state or common-law offenses—at least robbery originally,[4] and later larceny also, as shown by the express language of the act, irrespective of the Attorney General's intent. Furthermore, the use of the word "larceny" is highly significant. No attempt is made here to define this term, and we must go to state and common-law authorities for its meaning. The fact that one term of a statute has such a common-law or state significance would naturally lead to the conclusion that another term used in the same phrase has a like significance.

It will not do to say that larceny has not this broad significance, but refers only to the crime of stealing or purloining property or money from a bank, which is defined in other provisions of the Act of 1937. For the choice of this ancient and honorable common-law term in preference to either a simple extension of the crimes later defined to attempts or a simple reference to any offense defined by this act points to deliberation in selection of all-inclusive terms.[5] "Larceny" was, of course, not identical with "felony," since it also included petty thefts. But its use here when other phrases would have been apt, if lesser and more precisely defined crimes alone were in view, is most persuasive of a legislative intent to include all state offenses.[6] That jurisdiction over *these* offenses was not reserved exclusively to the federal courts points towards this same conclusion.

On the other hand, if the statute is to be given the limited effect claimed by defendant, its scope, as to felonies, is compara-

---

[4] See 1 Law & Contemp. Prob. 448; 21 Va.L.Rev. 568, 572.

[5] This is borne out by the legislative history as to this part of the 1937 Act. Originally the provision recommended by the Attorney General did not contain a statement of the penalty, but continued after the word "depredation": "or whoever shall take or carry away, with intent to steal or purloin, any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." Construing larceny under the circumstances, particularly in view of the word "depredation," as referring to the offense stated in the latter part of the same sentence would have been, indeed, a forced construction. The form of this statute was changed as a part of the Committee's amendments to meet the objection of its undue severity. 81 Cong.Rec. 5376, 5377. The change consisted in adding the statement of this penalty after the word "larceny," thus making it applicable to this part of the statute, as well as the original bank-robbery provision, and in dividing the second offense in two parts with different penalties, thus: "or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both." 12 U.S.C.A. § 588b.

[6] How far "stealing or purloining" is actually identical with common-law or state larceny cannot be shortly answered in view of the various fine shades of meaning in all these various terms (see 32 Am.Jur. 885 for interesting examples; and compare Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115); perhaps defendant was guilty of an intent to "purloin" funds of the bank. Moreover, "larceny" by itself does not suggest a limitation to stealing only from a bank.

tively slight, and the legislators might well have confined it to robbery and larceny only, so far as its practical usefulness in protecting national banks is concerned. It is said, however, to have some coverage, particularly as it applies to "attempts" to enter with the appropriate felonious intent. But that seems more a theoretical than a practical answer. It is a usual practice, with respect to federal crimes, for the statute to include an attempt as a defined offense when that seems appropriate; one might even deduce a federal policy as to attempts against general legislation, and in favor of specific definition with reference to specific crimes. Thus, by the well-known statute of 1872, 18 U.S.C.A. § 565, a defendant may be found guilty of an attempt to commit the offense with which he is charged "if such attempt be itself a separate offense." At any rate, the result is that federal legislation on crimes is already rather complete as to attempts where they are important, and this backhanded way of reaching attempts seems quite unnecessary and rather useless as an aid to federal officers in their war on organized crime. That is, a potentially effective statute, applying to cases such as the present where federal prosecution ought to be as much available as in any case of $50 theft, would be rendered comparatively nugatory. Such a result seems even less likely to have been intended when we consider that the act was again amended in 1940 to make it a crime to "receive, possess, conceal, store, barter, sell, or dispose" of any property or money, knowing it to have been taken from a bank in violation of the earlier subdivision of the section. 54 Stat. 695, adding (c) to § 588b. The seemingly broad and all-inclusive terms of this 1940 amendment would then also turn out in fact to be sadly limited by the construction given the earlier provision.

The strongest, perhaps the only, argument against these views is that they give too wide a sweep to the statute. But, as we have seen, the proponents of the measure contemplated a definite broadening of the earlier provisions. It is urged, however, that the statute, as thus construed, might cover in all sorts of state offenses committed in a banking house, but not actually directed against the bank. It would seem, however, that this is not an objection which the legislative body would con-sider at all conclusive. Suppose a shooting to occur in a bank; would it not seem desirable to have this a matter of federal investigation, even if it did not immediately appear that this had some direct connection with the bank? And in practice, as distinguished from theory, the objection seems rather unreal, for a bank lobby is not the appropriate place to stage all miscellaneous crimes; and those there committed actually unconnected with the operation of the bank are not likely to be numerous. Under the circumstances a legislative draftsman might well prefer to avoid the pitfalls of specification and limitation by use of a generality of expression which, indeed, has been somewhat the feature of recent legislation on crime, particularly that sponsored by Attorney General Cummings.[7] See, for example, the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408; the National Stolen Property Act, 18 U.S.C.A. § 413 et seq.; the National Cattle Theft Act, 18 U.S.C.A. §§ 419a–d; and the Fugitive Felon Act, 18 U.S.C.A. § 408e—all built on the basis of state crimes.

There are other difficulties in the more limited construction of the statute, even of determining what the more limited meaning is. As suggested above, two alternatives are offered—a profusion which perhaps itself suggests doubt of each. If the word applies to all federal felonies, the objection just discussed of wide character of offenses subject to prosecution and their lack of direct connection with the banking business is just as appropriate. Even more, some of the results would border on the ridiculous; while the misdeed here in issue, resulting in direct and substantial loss to the bank, would not be covered, yet entry with intent to violate the Mann Act or the narcotic laws would be. The so-called definition of felonies in 18 U.S.C.A. § 541 does not require such a result. The classification of the statute may be applied here as stated, and yet the offense committed by this defendant may be fully and correctly embodied in the statute. Sec. 541 does not define and exclude; it says simply what, for purpose of federal laws generally, shall be labeled a felony. If a federal crime is here stated (and § 541 does not purport to shed light on that matter), then it is clear that it is a felony under § 541 because of the nature of the punishment.[8]

---

7 See note 1, supra.

8 Even if § 541 be pressed to greater significance, there is another meaning which seems preferable to that urged by

If, however, we go further and attempt to limit the statutory meaning to felonies against national banks or the currency, we have an idea which well might have been accepted by the legislators but for which there seems no real basis in the language of the statute, or its background, to justify. It seems like a definition tailored to fit the cloth, after the cloth has been decided upon. Why, for example, should we not fashion it to read "federal and state felonies against national banks" and thus include this case, rather than the even more stilted "federal felonies only and only against national banks" ?

■ We conclude, therefore, that defendant was properly convicted of the first crime with which he was charged.

■ ■ II. Little need be said of defendant's conviction of escape from the Rutland County Jail. The applicable statute, 18 U.S.C.A. § 753h, passed in 1930 and amended in 1935, so far as here material reads: "Any person committed to the custody of the Attorney General or his authorized representative, or who is confined in any penal or correctional institution pursuant to the direction of the Attorney General, or who is in custody by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, * * * who escapes * * * from such custody or institution, shall be guilty of an offense." Defendant concedes that if—as we have found—he was properly charged with an offense against the United States, then his escape is a violation of this statute. But even had our decision been otherwise on the first issue, this statute clearly is intended to reach any one who is held by virtue of any proper and legal process. In Aderhold v. Soileau, 5 Cir., 67 F.2d 259, it was held that the statute was violated by an escape from a reformatory by one who was serving a sentence so uncertain as to be void. It was also held that nonetheless a prisoner was not entitled to take the law into his own hands, but should be limited to other means of testing the question. We think the same rule is appropriate here, just as conviction under a statute later found to be unconstitutional does not justify an es-

cape. See Kelley v. Meyers, 124 Or. 322, 263 P. 903, 56 A.L.R. 661, 669–671.

The judgments of conviction are affirmed.

FRANK, Circuit Judge (concurring in part and dissenting in part).

I agree, of course, that appellant was properly convicted under U.S.C.A., Title 18, § 753h, regardless of the validity of his conviction under U.S.C.A. Title 12, § 588b.

I cannot, however, agree that he was properly convicted under U.S.C.A. Title 12, § 588b, i.e., that entering a bank with intent to commit a forgery is a federal crime. The majority's interpretation of that section is not necessary to accomplish the Congressional purpose (indeed it ignores that purpose as shown by the legislative history); calls for federal enforcement of a huge number of state criminal laws, imported by mere implication into the federal system, with respect to more than thirteen thousand banks; leads to highly awkward consequences; and involves the unusual method of broadening a penal statute by latitudinarian construction. To make clear my reasons for dissenting, it is desirable that I first restate some of the facts relating to the history of that section.

1. In 1934, 12 U.S.C.A. § 588b was first enacted. It provided, among other things —subdivision (a)—for federal punishment of one who "by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank." In 1934, the section was amended to include in the definition of bank not only national banks but all banks insured under Title 12 U.S.C.A. 264c; it thus covers not only national banks but numerous state banks—in all, as of the end of last year, 13,427 banks.

This section was further amended in 1937. The legislative history (discussed briefly below) shows that the Congressional purpose in adopting these 1937 amend-

---

defendant, namely, that the state offense must rise to the dignity of a felony as here defined before it is within the statute. Thus, if a state statute defined a felony as including one for which im-

prisonment of six months was provided, there might be a question whether § 541 would not control, in spite of the state statute, to exclude an offense punishable only by six months' imprisonment.

ments was to add, to the existing federal crime of bank robbery, (a) the federal crimes of felonious stealing from and petit larceny from a bank; (b) the federal crime of burglary of a bank; and (c) the federal crime of peaceably entering a bank with the intent thus to steal bank property. These objectives were achieved by the following 1937 amendments to § 588b:

(a) Taking or carrying away, with intent to steal or purloin, property of or in possession of a bank was then made a new federal crime.[1] If the value of the property stolen is more than $50, the punishment includes imprisonment for not more than ten years; such stealing is made a federal felony, as felony is defined in 18 U.S.C.A. § 541, i.e., an offense which may be punished by imprisonment for more than a year.[2] If the value is $50 or less, the punishment includes imprisonment, but not for more than a year; such stealing is thus made a misdemeanor, as that term is defined in 18 U.S.C.A. § 541. (It should be noted that stealing, when it is less than a felony, is commonly called petit larceny. See, e.g., 36 C.J. 800.)

(b) The other chief change made in 1937 in § 588b was the inclusion of a sentence making it a federal crime to "enter or attempt to enter any bank * * * with intent to commit in such bank * * any felony or larceny * * *."

These two changes nicely correlate: The first change made stealing from a bank either a federal felony or federal petit larceny. The second made it a federal crime to enter or attempt to enter a bank with intent to commit such a federal felony or federal larceny. And such an entry was constituted a federal crime whether peaceably made or by breaking in; it thus includes burglary of a bank, i. e., breaking and entering with a felonious intent.

That it covers more than "burglary" obviously does not prevent it from including "burglary." And that it includes breaking and entering with less than felonious intent —i. e., with intent to commit petit larceny —again does not prevent it from covering what has been traditionally known as "burglary," i. e., breaking and entering with felonious intent.

2. The legislative history shows that, to achieve the Congressional purpose in enacting these amendments, it is not at all necessary to accept the interpretation adopted in the majority opinion, i. e., to define "felony" as including all felonies under not only federal but state law; it is amply sufficient to hold that "felony," in the phrase, "enter or attempt to enter any bank * * * with intent to commit in such bank * * * any felony or larceny * * *," means (a) any federal felony (b) affecting a bank covered by § 588b:

(a) The original Act, enacted in 1934, grew out of proposals of the Attorney General. As stated in a footnote in the majority opinion, his draft of the statute, then proposed, included the offense of breaking into a bank with intent to commit *any felony under* federal or *state* law. Congress rejected that proposal when it passed § 588b in 1934. Significantly, when, in 1937, the Attorney General proposed amendments to 588b, he did not again suggest any reference to "state law"—obvious verbiage if the purpose was to include state-law felonies. It is, then, apparent that Congress knew the apt words to accomplish that purpose. Indeed, in 18 U.S. C.A. § 468, dealing with crimes on lands over which the federal government has jurisdiction but within the territorial limits of any state, Congress explicitly stated that if anyone does an act which is not made penal by federal statute, but where such act "if committed * * * within the jurisdiction of the State * * * in which such place is situated * * * would be penal," he "shall be deemed guilty of a like offense * * *." There is, therefore, pertinent here the familiar rule that a statute is not, by interpretation, to be given an extended meaning when, had the legislature intended that meaning, it would have been so "easy to say so." [3]

(b) Without referring in any way to "state law," the Attorney General, in his

---

[1] The majority opinion relegates to a footnote this important part of the 1937 amendments.

[2] That section reads: "All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. All other offenses shall be deemed misdemeanors. * * *"

[3] See, e. g., Farrington v. Tennessee, 95 U.S. 679, 689, 24 L.Ed. 558; Union National Bank v. Matthews, 98 U.S. 621, 627, 25 L.Ed. 188; Baltimore & P. R. Co. v. Grant, 98 U.S. 398, 403, 25 L.Ed. 231; Vicksburg, S. & P. R. Co. v. Dennis, 116 U.S. 665, 670, 6 S.Ct. 625, 29 L.Ed. 770; United States v. Chase, 135 U.S. 255, 259, 10 S.Ct. 756,

letter to the Chairman of the Senate Judiciary Committee, proposing amendments in 1937, said that his purpose was to add to § 588b "the crimes of burglary and larceny of a bank." [It will be observed that he said "of" not "in" a bank.] He also said that the fact that the statute "is limited to robbery, and does not include larceny and burglary, has led to some incongruous results." He gave, as a "striking instance," a case where a man had walked out of a bank with $11,000 of the bank's funds, of which he had gained possession during a momentary absence of one of the bank employees, without displaying any force or violence and without putting any one in fear; since those were necessary elements under the statute as it then stood, the Attorney General pointed out that the man could not be prosecuted "under any federal statute." Now it is clear that, without any necessity of construing "felony" to mean state-law felonies, bank-burglary and bank-larceny and the specific kind of case cited by the Attorney General are all fully covered by the 1937 amendments.

(c) It is to be observed that nowhere did the Attorney General say or even imply that he wanted the statute amended so as to include (1) crimes not affecting banks; or (2) any federal crimes in addition to burglary and larceny; or (3) all state felonies or larcenies. He did not so much as mention forgery. And still less did he suggest that he desired to convert into a federal crime the entry into or attempt to enter a bank with intent to commit a forgery— while omitting from the category of federal crimes the actual commission of such a forgery.

The title of the 1937 Act containing the amendments of § 588b is "To amend the bank-robbery statute to include burglary and larceny." That objective—which surely indicates no purpose to include entering or attempting to enter a bank with intent to commit forgery or all state-law felonies —is now fully covered by the section, thus amended, without lugging in state-law felonies.

(d) This also is significant: § 2 of the statute proposed by the Attorney General in 1934, and introduced as a Senate bill, made it a federal felony to take money from a bank with its consent when such consent was induced by fraud. Representative Hatton Sumners, Chairman of the House Judiciary Committee, "sought throughout the session to confine extensions of federal power to situations where the need to supplement state and local enforcing agencies had become imperative"; and it was "evident that to have brought all cases in which money is taken fraudulently from banks within the scope of federal criminal jurisdiction would have placed a heavy enforcement burden upon the federal government." [4] As a result of Representative Sumners' opposition, the fraud provision was eliminated. It is important to note, then, that the 1937 amendments sponsored by the Attorney General were included in a bill introduced in the House of Representatives by Representative Sumners whose objections in 1934 had led to the elision of the fraud provision. It is highly unlikely that, in 1937, without explanation, he abandoned those objections and urged legislation which not only covered the crime of fraud on a bank (for, in most states, that is a felony) but went much further. And it is not to be believed that the Attorney General so intended, for, if so, his letter explaining those amendments was most misleading, as it stressed bank "larceny and felony" and contained nothing indicating a purpose to reintroduce the fraud provision. Yet the majority's interpretation of those amendments has the effect of including it [5]—and does far more besides by way of placing a heavy enforcement burden on the federal government to prosecute persons for entering or attempting to enter any one of 13,427 banks

34 L.Ed. 117; United States v. Koch, C.C., 40 F 250, 252, 5 L.R.A. 130; Harrington v. Herrick, 9 Cir., 64 F. 468, 471; Central Real Estate Co. v. Commissioner, 5 Cir., 47 F.2d 1036; Commissioner v. Beck's Estate, 2 Cir., June 24, 1942, 129 F.2d 243.

True, in the National Stolen Property Act, 18 U.S.C.A. § 413ff, and the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408, and certain other Acts, the words "steal" and the like are used and must sometimes be given their meaning under state laws; but such interpretation of those words is, in those Acts, essential, else those words in those Acts would be functionless. But, as shown above, the words "felony" and "larceny," in 12 U. S.C.A. § 588b are meaningful and have a function without importing state felonies and larcenies into that Act.

[4] 1 Law and Contemporary Problems (1934) 445, 448-449.

[5] For, under many states laws obtaining money by fraud is a felony.

with intent to commit any act which is a felony or larceny under the law of the State in which such bank is located. (In effect, it makes each one of the 13,427 banks covered by the Act, to a large extent, the equivalent of a territory within the jurisdiction of the United States, as if included within Title 18, Chapter 11 [§ 451 et seq.], which brings all state laws into play as to such a territory.)

3. Not only is the majority's definition of "felony" not needed to achieve the purposes of the 1937 amendments, but that definition leads to awkward and, in some instances, irrational results:

(a) An outstanding awkwardness in so defining "felony" is illustrated by the indictment and conviction of appellant: He was not charged with committing a forgery, but with entering a bank with intent to commit a forgery in a national bank.[6] In truth, no one would think of trying to procure an indictment and conviction in the federal courts for forgery victimizing such a bank—for the very good reason that such a forgery is patently not a federal crime. Under 12 U.S.C.A. 596, it is a federal crime to make a false statement to procure loans, etc., from the 12 Federal Reserve Banks and their 24 branches. But neither that nor any other federal statute covers forgeries vis a vis national banks or any other of the 13,427 banks covered by § 588b. It is obvious then that, if the majority opinion correctly construes 12 U.S.C.A. § 588b, a man who enters any of those 13,427 banks with innocent intentions and then, when in the bank, commits a forgery, is guilty of no federal crime, but he is thus guilty if he enters or attempts to enter any such bank with intent to commit the state crime of forgery—even if that intent is frustrated. He is, moreover, guilty of no federal crime if, while not in the bank building but in the office of the bank's lawyer (two blocks away), he forges a note, delivers it to the lawyer as the bank's representative, and procures money thereby. The curious consequence of the majority's interpretation is that the minor offense is a federal crime and the major offense is not.

(b) The majority opinion asserts—mistakenly, as I think I have shown—that it is necessary to interpret "felony" as including state-law felony, if § 588b is to carry out the Congressional purpose of making bank burglary a federal crime. But the majority interpretation does not achieve that purpose: Under that interpretation, no one can properly be federally indicted for a bank burglary, but only for entering or attempting to enter a bank with the intent to commit burglary; to be sure, the practical result is the same, but the necessary circumlocutory wording of an indictment for burglary under the majority's interpretation goes to show that Congress could not have intended to punish burglary in any such roundabout way.

(c) The majority's interpretation leads to even more surprising results: The most serious state felony is, of course, murder. If a man enters one of the 13,427 banks with innocent intentions but, while in that bank, becomes engaged in a quarrel and shoots and kills another man in no way connected with the bank, no federal crime has occurred. But, according to the majority's interpretation of § 588b, if a man attempts to enter such a bank with intent to murder such a person, and is prevented from doing so, he is guilty of a federal crime.

(d) The awkwardness of the majority's interpretation becomes more marked when one considers the numerous acts which are felonies under state laws—rape, and adultery, for instance. [The majority opinion itself indicates that it is laughable to suppose that Congress meant to include in § 588b the entry into a bank with intent to violate the federal White Slave Act (Title 18 U.S.C.A. § 398).]

4. All those disturbing consequences vanish, if "felony" in the sentence in question is limited, as I would limit it, in two ways: (a) To mean only those acts which are felonies under federal law, i.e., defined, in Title 18 U.S.C.A. § 541, as federal crimes punishable by imprisonment for more than a year. (b) To mean only such federal felonies as affect the banks covered

---

[6] The indictment charged that appellant "did unlawfully, wilfully and feloniously enter The Howard National Bank & Trust Company, said bank being a National Banking Institution and a member of the Federal Reserve System, with intent to commit in such bank a felony, to wit, knowingly, wilfully and feloniously to utter and publish to said bank, as true, a promissory note in the amount of Five Hundred Dollars ($500.) with the endorsement thereon of 'Henry S. Derby,' which endorsement was forged. * * * "

by § 588b—in other words to mean felonies *against* and not *in* such banks.[7]

The majority opinion surprisingly says that there is no reason to believe that that second limitation was intended by Congress. That comment ignores the title of the 1937 statute ("To amend the bank-robbery statute to include burglary and larceny") and the Attorney General's 1937 letter (which spoke of burglary and larceny "of" a bank).

In the field of government as well as in the field of science, the so-called "law of parsimony" should generally govern: One should, ordinarily, not use an elaborate method of accomplishing a result when a simpler method is available.[8] And so here, the direct route to the accomplishment of the Congressional purpose should be employed instead of resorting to the roundabout method of traveling through state law.

5. The majority opinion stresses the fact that the Attorney General, in 1937, proposed to make it a federal crime to enter a bank with intent to commit any "depredation." I fail to see the significance of that fact: (a) In the first place, the word "depredation" has no special legal connotation. The treatise, Words and Phrases, which includes all judicial definitions of words from 1658 to 1942 has no citations of any judicial use of that term. In lay usage, it means the act of plundering, preying upon, pillaging and the like, implying perhaps the use of violence. (b) And Congress rejected that word in enacting the 1937 amendments.

6. The majority opinion, in support of its interpretation of "felony" as including every state-law felony, refers to the fact that § 588d provides: "Jurisdiction over any offense defined by this Act [sections 588b and 588c] shall not be reserved exclusiveley to courts of the United States." But that provision was in that section when it was originally enacted in 1934 —at a time when the word "felony" was not contained therein; no one would suggest that its provisions as they stood in 1934—i.e., those relating to taking by force and violence—had the effect of im-

porting any state-law crime. The federal Employer's Liability Act, 45 U.S.C.A. § 56, provides that suits brought thereunder may be brought in state courts; yet no one would think of suggesting that that extension of jurisdiction to the state courts affects the meaning of that statute.

7. The majority opinion suggests that the interpretation which I give the statute will render difficult prosecution for burglary of a bank, because, it is argued, under that interpretation, it will be necessary to prove an intent to steal or purloin bank property. But prosecution for burglary—even state-law burglary—always necessitates proof of a criminal intent; and it is an easy inference for a jury that a man caught while breaking into and entering a bank had the intent to steal the bank's property.

8. The majority opinion concedes, in effect, that "larceny" in § 588b must mean petit larceny, as otherwise "larceny" would be superfluous (since larceny which is not petit larceny is already covered by "felony" in that section). But the majority builds on the use of the word "larceny" the following argument designed to show that both "larceny" and "felony" in § 588b must include state-law larceny and felony: "Larceny," it is said, is nowhere defined in the federal statutes; it is only by referring to common-law that one can learn that to "steal or purloin" connotes petit larceny (i.e., larceny when it is not a felony); for the common law one must turn to state-law; consequently "larceny" must at least include state-law petit larceny. And, so the argument runs, if "larceny" in § 588b includes state-law larceny, "felony" in that section must include state-law felony. To that argument there are several answers:

(a) In defining "felony," there is no need to refer to state law, as a felony is defined in the federal criminal code, 18 U.S.C..A. § 541. [I do not understand the majority to go so far as to say that "felony" in *that* section includes state felonies.]

(b) The word "larceny" is as fully defined in § 588b as is the word "robbery." And the majority opinion states that the word "robbery" is defined in that section

---

[7] And larceny means larceny *from* and not *in* a bank.

[8] Thus modern science, instead of adapting, by complicated elaboration, the Ptolemaic theory, has adopted simpler methods of explaining the movements of the heavenly bodies. Cf. as to recent developments in physics, Bridgman, The Logic of Modern Physics. See Union Electric Co. of Missouri, 1939, 5 S.E.C. 253, 261, note 15.

without recourse to state law, reasoning that the use of the word "robbery" in the title of that statute, as enacted in 1934, plus the description of the crime of robbery (i. e., taking by force and violence, etc.) in the section, constitute such a definition. By the very same reasoning, larceny is defined in § 588b without recourse to state law; for the word "larceny" is used in the 1937 amendatory statute and the crime of larceny (i.e., stealing or purloining) is described in that section.

Moreover, "larceny" is found elsewhere in the federal criminal code in an old statute, 18 U.S.C.A. § 466, relating to acts on land under the exclusive jurisdiction of the United States; the title of that section has always referred to "larceny" and the federal crime there described is to "take and carry away, with intent to steal or purloin, any personal property of another." So that, staying within the confines of the federal statutes, we find an old use of larceny to define the crime which is described in § 588b.

(c) Both the Constitution and the federal statutes employ many terms which are not there defined and the meaning of which can be ascertained only by turning to the common law. But that common law thus utilized for that purpose is not the common law of any particular state; and no one would argue that recourse to common law for that purpose imports into the federal Constitution or statutes the laws of any particular state. See the concurring opinion of Mr. Justice Jackson in D'Oench, Duhme & Co., Inc., v. Federal Deposit Ins. Corp., March 12, 1942, 62 S.Ct. 676, 86 L.Ed ——; cf. United States v. Forness, 2 Cir., 125 F.2d 928.

So it seems clear to me that "larceny" as used § 558b means the federal larceny of stealing or purloining from the banks therein referred to, and that "felony" as there used means any federal felony affecting such banks.[9]

9. The majority opinion suggests that this interpretation which I give to the sentence in question reduces it to a mere "attempt" provision, ineptly worded. That is not correct. The sentence itself explicitly makes a federal crime of the "attempt" to enter with the specified intent. The entry (or attempt to enter) with such intent constitutes the federal crime of burglary (or attempting to commit a burglary). It also constitutes the federal crime of peaceably entering (or attempting to enter) with such intent; to that extent, 588b contains an "attempt" provision.[10]

10. The 1940 amendment to § 588b makes it a federal crime to "receive, possess, conceal, store, barter, sell, or dispose" of any property, knowing it to have been taken from a bank in violation of the other provisions of that section. The majority opinion argues that the effect of not defining the phrase "entering or attempting to enter a bank with intent to commit any felony" so as to include all state felonies will be to "sadly limit" that 1940 amendment. Why? It will include receiving, possessing, etc., any property stolen or purloined from a bank. That is not a "sad" limitation.

11. I agree, in general, with the dissenting opinion in Hudspeth v. Melville, 10 Cir., 127 F.2d 373, 377;[11] I especially agree with the point there made that, since this is a penal statute, it should not, by construction, be generously construed in favor of the government.

---

9 Another federal felony affecting banks is found in The National Stolen Property Act, 18 U.S.C.A. § 413; see § 414(b). Entering a bank with intent to commit that felony is a crime under 12 U.S.C.A. § 588b as I interpret it. And if Congress should hereafter enact legislation creating other felonies affecting banks, then entering or attempting to enter a bank with intent to commit the same will automatically be a crime under 12 U.S.C.A. § 588b.

10 In a sense, the crime of burglary is itself a crime which consists of an attempt to perform another crime; for burglary is breaking and entering with the intent to do an unlawful act and is punishable whether or not that other act is performed.

The majority opinion intimates that appellant's forgery is perhaps punishable under that part of § 588b which punishes the taking or carrying away of a bank's property or money "with intent to steal or purloin" on the ground that "purloin" includes forgery. Aside from the fact that here the appellant procured no money or property but merely attempted to do so—so that the crime, if any, would be that of an attempt to purloin—the short answer is that, in the federal statutes, "steal or purloin" have been used to connote larceny. See 18 U.S.C.A. § 466.

11 See also the dissenting opinion in Hudspeth v. Tornello, 10 Cir., 128 F. 2d 172.